

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-2006

# Rezhdo v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2895

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Rezhdo v. Atty Gen USA" (2006). *2006 Decisions.* Paper 808.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/808

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-2895

ARDIAN REZHDO,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A78-698-676
(U.S. Immigration Judge: Honorable Donald Vincent Ferlise)

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 27, 2006

Before: SCIRICA, *Chief Judge*, NYGAARD and ALARCÓN[*], *Circuit Judges*

(Filed June 30, 2006 )

OPINION OF THE COURT

_____

[*]The Honorable Arthur L. Alarcón, United States Circuit Judge for the Ninth Judicial
Circuit, sitting by designation.

SCIRICA, *Chief Judge*.

Ardian Rezhdo petitions for a writ of habeas corpus, contesting the Board of Immigration Appeals' order denying him asylum, withholding of removal, and protection under the Convention Against Torture. We will grant the petition, vacate the removal order, and remand for a new hearing.

I.

Petitioner Rezhdo, a native and citizen of Albania, entered the United States in May 2000 without proper documentation. He was placed into removal proceedings under 8 U.S.C. § 1229a. The Immigration and Naturalization Service issued a Notice to Appear, which Rezho conceded. He requested relief from removal by applying for asylum, withholding of removal, and withholding under the CAT, alleging persecution because of his sexual orientation. The IJ made an adverse credibility determination and denied all of Rezhdo's applications for relief, issuing an order on April 23, 2001, which the Board summarily affirmed. In July 2003, the Board denied Rezhdo's motion to reconsider, on alternative grounds that it was untimely filed and that it failed to demonstrate reconsideration was warranted. Rezhdo filed a petition for writ of habeas corpus with the United States District Court for the Eastern District of Pennsylvania, which transferred the petition to this Court pursuant to the REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231 (2005). We convert the petition for a writ of habeas corpus to a

petition for review. 8 U.S.C. § 1252; *see Bonhometre v. Gonzales*, 414 F.3d 442, 446 (3d Cir. 2005).

Rezhdo's application is based on his homosexual relationship with Pellum Berberi, whose brother Genc Berberi was a bodyguard for former Albanian Prime Minster Bashkim Fino. Rezhdo contends that Genc Berberi, upon discovering the relationship, began a course of brutal treatment against Rezhdo that led to Genc Berberi and two others beating Rezhdo on a public street. Rezhdo filed a private criminal complaint against Genc Berberi. Before the court hearing, Rezhdo and Pellum Berberi applied for a marriage license, which the government denied because Albanian law does not extend marriage to homosexual couples. Rezhdo contends Genc Berberi became so angry upon learning of the marriage attempt that he burned down a store Rezhdo owned. Rezhdo testified he told the police but no arrest issued. Rezhdo and Pellum Berberi fled to Italy during the pendency of the legal proceeding on the assault, but not before, he claims, the judge in the case told him he should drop the complaint. After the two spent several months in Italy illegally, Pellum Berberi was fatally shot in their apartment. Rezhdo fingers Genc Berberi as the murderer, and now fears for his life. Rezdho fled to the United States, entering illegally.

## II.

Because the Board summarily affirmed, we review the opinion of the IJ. *Dia v. Ashcroft*, 353 F.3d 228, 245 (3d Cir. 2003) (en banc). We review an immigration judge's

3

findings of fact and credibility determinations under a substantial evidence standard. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).

The IJ based his adverse credibility finding on several factors. First, the IJ criticized Rezhdo for confused dates. For example, Rezhdo testified that the hearing on his private criminal complaint took place in August 1998 but on cross he claimed it occurred in March 1998. Second, the IJ found it incredible that a person would wait in a public square across from his apartment if he were afraid of being murdered in that apartment.[1] Third was Rezhdo's claim that Genc Berberi had asked Rezhdo's family permission to kill Rezhdo while Rezhdo was in Italy. Finally, the IJ found Rezhdo's demeanor demonstrated he was lying. The IJ noted he was sweating profusely and appeared extremely nervous.

Adverse credibility findings must be grounded in the record and must be based on inconsistencies or improbabilities crucial to the claim. *Zheng v. Gonzales*, 417 F.3d 379, 381 (3d Cir. 2005). In general, "minor inconsistencies and minor admissions that 'reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding.'" *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002) (quoting *Vilorio-Lopez v. INS*, 852 F.2d 1137, 1142 (9th Cir. 1988)). Most of the supposed inconsistencies here were minor, soon corrected, and either do not go "to the heart of the

_____

[1]Rezhdo testified that when he suspected Pellum Berberi had been shot at their shared apartment in Italy, he waited for hours at a public bar across the square from his apartment, keeping watch over the apartment and waiting for news.

4

asylum claim," *Zheng*, 417 F.3d at 381, or resulted from the IJ's improper conjecture. We conclude that substantial evidence does not support the's IJ determination that Rezdho was not credible.

As for the first "inconsistency," the discrepancy in date was a misplaced month (March for August) and the date was not nearly as important to Rezdho's narrative as the IJ made it seem. Regarding the second finding, the IJ's discussion on this point is conjecture—Rezhdo might have stayed in the bar, for example, to keep an eye on the comings and goings from his apartment. There is nothing inherently implausible about his story. *See Jishiashvili v. Att'y Gen.*, 402 F.3d 386, 393 (3d Cir. 2005) ("Where the IJ rejects an applicant's testimony, the IJ must provide a specific, cogent reason for doing so, rather than relying on speculation, conjecture, or an otherwise unsupported personal opinion." (quotations and citation omitted)). As for the third finding, Rezhdo explained that his homosexuality caused his family deep shame. That his family might be involved in his attempted murder or that Genc Berberi might have sought and found support from them is in line with Rezhdo's testimony on how homosexuals are treated in Albania. As for the final finding, his sweating, nervousness, and minor testimonial inaccuracies might have resulted from Rezhdo's hypertension, a condition to which Rezhdo testified and to which he offered proof, though it does not appear the IJ viewed or accepted the evidence.

5

(App. 202.) Accordingly, substantial evidence does not support this adverse credibility finding.[2]

### III.

The IJ made two alternative holdings "[a]ssuming arguendo that the Court had found the Respondent credible." (App. 22). The IJ held first that Rezdho "has not produced a scintilla of evidence to reflect that he would be persecuted in Albania, or has been persecuted in Albania . . . " (*Id.*) Second, the IJ held Rezdho could avoid future persecution by relocating to another part of Albania, "where no one knew of his past homosexual activity and where Genc was not present." (App. 22–23.) On their face, these holdings might be sufficient to show Rezhdo was not entitled to the relief he sought. *See Chen v. Gonzales,* 434 F.3d 212, 221–222 (3d Cir. 2005) ("If the IJ's decision in this case is supported by substantial evidence in the record, then his failure to make a valid credibility determination would not bar this Court's denial of the petition for review without a remand."). However, we are not convinced these were truly alternative

---

[2]In two recent cases, we granted petitions arising from decisions by Donald V. Ferlise, the same IJ who handled this case. *See Shah v. Att'y Gen.*, 446 F.3d 429, 437 (3d Cir. 2006) (granting a petition for review based on failure to credit corroborating evidence and on hostile questioning, under the substantial evidence standard); *Cham v. Att'y Gen.*, 445 F.3d 683, 690–92 (3d Cir. 2006) (granting a petition for review on due process grounds because the IJ's "belligeren[t]" questions that led to his adverse credibility finding "prejudiced both Cham's ability to present his claims and the appropriate resolution of those claims"). We decide this case on its own facts alone, but we note the similarity between this case and *Shah* and *Cham*. In all three cases, the IJ made erroneous or conjectural credibility findings. While we note the similarities, our review of the hearing transcript does not reveal errors rising to the level of a due process violation.

6

holdings that assumed Rezdho's credibility. *Cf. Gui Cun Liu v. Ashcroft*, 372 F.3d 529, 534 (3d Cir. 2004) ("[R]emand is appropriate where, as here, we have made a legal determination (e.g., regarding admissibility of evidence) that fundamentally upsets the balancing of facts and evidence upon which an agency's decision is based."). Additionally, the IJ's explanation of his alternative holdings is terse and undeveloped, so that it is difficult for us to gauge what parts of Rezdho's testimony, if any, the IJ relied on. *See Toure v. Att'y Gen.*, 443 F.3d 310, 325 (reaffirming in light of the REAL ID Act that "(1) an IJ has a duty to develop an applicant's testimony, especially regarding an issue that she may find dispositive, and (2) as a logical predicate to appellate review, the BIA must adequately explain the reasons for its decisions" (internal citations omitted)). Remand is therefore necessary.

Regarding past and future persecution, had the IJ properly credited Rezdho's evidence, Rezdho might have shown more than that Genc Berberi, as a private criminal, threatened his safety. *See Abdille v. Ashcroft*, 242 F.3d 477, 494 (3d Cir. 2001) ("Ordinary criminal activity does not rise to the level of persecution necessary to establish eligibility for asylum."). Genc Berberi was a bodyguard for the former prime minister, and, if we believe Rezhdo's testimony, Rezhdo made several attempts to pursue police and court assistance, to no avail. Rezhdo also testified that the judge—adjudicating his private criminal complaint against Genc Berberi—told him on the courthouse steps to drop the case. It appears the IJ did not properly credit this testimony, as he should have if

7

this were truly an alternative holding that assumed Rezdho's credibility. In any event there was much more than "a scintilla of evidence" of persecution. (App. 22.)

Regarding the IJ's finding that under 8 C.F.R. § 208.13(b)(1)(B) Rezhdo could relocate to another part of Albania where his homosexual activities are not known, this is also not a true alternative holding. Rezhdo testified that Genc Berberi traveled to Italy to murder Pellum Berberi and to attempt to murder Rezdho; if an IJ credited Rezdho's testimony, Albania could not be safer than Italy. This "alternative" holding does not foreclose remand.[3]

Rezhdo also applied for restriction on removal and for protection under the Convention Against Torture. Restriction on removal has a higher standard of proof than does asylum, *e.g., Guo v. Ashcroft*, 386 F.3d 556, 561 n.4 (3d Cir. 2004), but Rezhdo should have another opportunity to press this claim for the reasons stated. We will not, however, remand his claim for CAT relief. Rezdho presented no evidence that he will "more likely than not" be tortured upon return to Albania. *Wang v. Ashcroft*, 368 F.3d 347, 349 (3d Cir. 2004) (quoting 8 C.F.R. § 208.16(c)(2)). Substantial evidence supports the IJ's denial of CAT relief.

---

[3] We hold only that the IJ's "alternative" holdings do not insulate the opinion from a remand for a new hearing (based on the erroneous credibility finding), not that Rezhdo qualified for the relief he sought. At the new hearing, a different IJ will be able to determine Rezhdo's eligibility, and, in the absence of an erroneous credibility determination, Rezhdo might or might not carry his burden.

Finally, Rezhdo appeals the Board's July 2003 denial of his motion to reconsider. We review for abuse of discretion. *Sevoian v. Ashcroft*, 290 F.3d 166, 170 (3d Cir. 2002). Because we grant the petition and vacate the removal order, a holding on this issue is not necessary. In any event, the Board did not appear to err in finding the motion untimely.

IV.

For the foregoing reasons, we will grant the petition for review (arising as it does as a petition for habeas), vacate the order of removal, and remand for new hearing before a different IJ.