

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-15-2005

# Zheng v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 04-3008

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Zheng v. Atty Gen USA" (2005). *2005 Decisions.* Paper 606.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/606

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-3008
_____

QUN ZHENG,

*Petitioner*

v.

ALBERTO GONZALES, ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Board No. A78-864-293)
_____

Submitted Under Third Circuit LAR 34.1(a)
June 30, 2005
Before: RENDELL, BARRY and BECKER, *Circuit Judges*

Opinion Filed: July 20, 2005

CHARLES CHRISTOPHE
ALEKSANDER B. MILCH
MEER M.M. RAHMAN
Christophe & Associates, P.C.
67 Wall Street, Suite 210
New York, NY 10005
*Attorneys for Petitioner*

PETER D. KEISLER
Assistant Attorney General
Civil Division
LINDA WERNERY
JESSICA DUNSAY SILVER
GREGORY B. FRIEL
Department of Justice
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
*Attorneys for Respondent*

_____

OPINION OF THE COURT
_____

BECKER, *Circuit Judge.*

This is a petition for review by Qun Zheng, a native and citizen of China, of a decision by the Board of Immigration Appeals (BIA) affirming, without opinion, a decision by an Immigration Judge (IJ) denying Zheng's requests for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). Because we find that the IJ's decision was based on substantial evidence, we will deny the petition for review.

I.

Qun Zheng, also known as Zhao Xin Zhu, was born in China in 1989. He claims that his mother was forcibly sterilized shortly after giving birth to him, because he was her third child and she had thus violated China's family planning policy. His father left China in 1992, and his mother in 1997, leaving Zheng with his grandparents. Both of Zheng's parents came to the United States and petitioned for asylum. Their petitions were denied, although it appears that they both remain in the United States. *See Xiu Jin Wang v. BIA*, 87 Fed. Appx. 209 (2d Cir. 2004) (unpublished summary order).

Zheng claims that, in April 2002, he wrote an essay called

2

"My Mother" for a school assignment. Zheng's essay was allegedly highly critical of the Chinese government, and of his mother's forcible sterilization. According to Zheng, in reaction to this essay, the principal of his school demanded that Zheng write a "self-criticism" renouncing it. If he failed to do so, he claims, he would be sent to a juvenile re-education camp.

Zheng relates that the principal sent him home to write his self-criticism, and that, after discussing the issue with his grandparents, he decided to go into hiding at his uncle's house. He did so some five to eight days later, never having returned to school. At some point after this, his grandmother came to visit Zheng in hiding. She allegedly told him that the principal of the school had called her and told her that if Zheng was found he would be sent to the juvenile re-education department. She therefore contacted smugglers to get Zheng to the United States to be reunited with his parents. After about a week at his uncle's, Zheng left with a smuggler, who obtained false documents for him. After staying in a hotel with the smuggler for some time, he left for America, and arrived in Chicago on June 10, 2002.

Zheng was stopped at the airport and taken into custody. Zheng was released from custody in August 2002, and went to live with his mother in New Jersey. In November 2002, an IJ granted a change of venue to Newark. Before the IJ, Zheng conceded removability and applied for asylum, withholding of removal, and protection under the CAT. An asylum hearing was held on April 2, 2003, in Newark. Zheng presented his own testimony and some documentary evidence, including a rewritten copy of his "My Mother" essay (he did not have a copy of the original) and letters from two school friends corroborating some aspects of his story.

At the close of the hearing, the IJ rendered an oral decision. He found that, if true, Zheng's allegations would make out a claim for asylum, in that he alleged a fear of persecution based on "other resistance" to China's family planning policy. *See* 8 U.S.C. § 1101(a)(42). But the IJ determined that Zheng had not met his burden of establishing persecution because his testimony was not credible. He therefore denied asylum, withholding of removal, and CAT protection based on past persecution. He also denied CAT relief based on Zheng's alleged fear that, if he returned to China, he would be tortured for leaving China illegally.

The BIA affirmed without opinion, leaving the IJ's opinion

3

as the final agency determination. We have jurisdiction over Zheng's timely petition for review pursuant to 8 U.S.C. § 1252.

## II.

Because the BIA affirmed without opinion, we review the IJ's opinion. *Dia v. Ashcroft*, 353 F.3d 228, 245 (3d Cir. 2003) (en banc). The standard of review is the familiar "substantial evidence" standard: "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Adverse credibility determinations are factual findings subject to substantial evidence review. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 597 (3d Cir. 2003). But credibility findings must be grounded in the record, *id.*, and must be based on inconsistencies and improbabilities that go to the heart of the asylum claim, *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002).[1]

## A.

The IJ found numerous inconsistencies and implausibilities in Zheng's evidence. Zheng persuasively disputes several of the IJ's findings. Most notably, the IJ found it "utterly implausible" that the principal would allow Zheng to return home to write his self-criticism, rather than require him to write it immediately in his office. The IJ pointed to no basis in the record, or in logic or experience, for this finding of implausibility. "Adverse credibility determinations based on speculation or conjecture, rather than on evidence in the record, are reversible," *Gao*, 299 F.3d at 272, and we reject this conclusion as pure speculation.

---

[1]Congress has recently revised this judicially created standard to allow a trier of fact to find a lack of credibility based on any inconsistency or falsehood, "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." Real ID Act of 2005, § 101(a)(3), Pub. L. No. 109-13, 119 Stat. 231, 303, *to be codified at* 8 U.S.C. § 1158(b)(1)(B)(iii). This provision, however, applies only to applications for asylum made after the effective date of the Real ID Act, *see id.* § 101(h)(2), and so does not apply to Zheng's case.

The IJ also noted that Zheng's I-589 form, part of his written asylum application, lists his address as his grandparents' hometown from birth until June 2002. The IJ found the lack of any indication that Zheng lived with his uncle, or otherwise in hiding, important: "The fact that he lived at that address before coming to the United States, and not at the uncle's place, or somewhere else, is very revealing. It constricts [sic] the whole notion of flight." The IJ found it a "major significant inconsistency" that Zheng listed only this one address in China.

Zheng argues that this finding amounts to "no more than a game of 'gotcha' with a juvenile Respondent." Zheng is a teenager who speaks little or no English; his mother read over the I-589 form before he signed it, but he apparently did not. Furthermore, as the form asks aliens to list their "residences during the last five years," it would not be unreasonable for Zheng to omit places where he stayed in hiding for no more than a few weeks. The omission strikes us as only a minor error, and such "minor inconsistencies and minor admissions that reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding." *Gao*, 299 F.3d at 272 (internal quotation marks omitted).

In short, we are troubled by some of the reasons underlying the IJ's adverse credibility finding. Nonetheless, we are bound to uphold the IJ's decision if it is supported by substantial evidence, and may do so even if we reject some of its bases. *See He Chun Chen v. Ashcroft*, 376 F.3d 215, 224-25 (3d Cir. 2004) (finding substantial evidence for an adverse credibility determination despite our "extreme discomfiture" with some of the IJ's specific findings).

B.

In this case, the most compelling support for the IJ's adverse credibility determination comes from the simple implausibility of Zheng's story. Zheng's testimony, his asylum application, and his supporting documentary evidence all strongly support the IJ's conclusion that this case "is all about a young boy wanting to join his parents," rather than about an opponent of China's birth control policies fleeing governmental persecution. The copy of "My Mother" in the record, which Zheng allegedly rewrote from

5

memory after arriving in the United States, creates the distinct impression that it was written solely for asylum purposes. For a school assignment to write about his mother, Zheng claims to have written an essay consisting largely of criticisms of "Chinese government cadres" and admonitions that "the cadres had better watch their behavior and be nice to ordinary people." The IJ was within his rights to suspect the authenticity of this strange and tendentious essay.

In *Jishiashvili v. Attorney General*, 402 F.3d 386, 393 (3d Cir. 2005), we explained the requirement that a credibility determination based on "implausibility" must be "grounded in the record"—as, for example, by reference to country conditions—in order to avoid "speculative or conjectural reasoning." We think that the IJ's implausibility determination here had some basis in the record, in that there was evidence to support his belief that Zheng came to America because he missed his parents, not because he was persecuted.

C.

At all events, the IJ did not rely on implausibility alone. Instead, he determined that, due to the inherent implausibility of Zheng's story, and the (relatively minor) contradictions in his testimony, it would not be unreasonable to expect some evidence to corroborate Zheng's account. In *Abdulai v. Ashcroft*, 239 F.3d 542, 551-54 (3d Cir. 2001), we upheld the BIA's rule on corroboration set out in *In re S-M-J-*, 21 I. & N. Dec. 722 (BIA 1997). Under this rule, "(1) an applicant need not provide evidence corroborating the specifics of his or her testimony unless it would be 'reasonable' to expect the applicant to do so; but (2) if it would be 'reasonable' to expect corroboration, then an applicant who neither introduces such evidence nor offers a satisfactory explanation as to why he or she cannot do so may be found to have failed to meet his or her burden of proof." *Abdulai*, 239 F.3d at 551.

We find no fault with the IJ's conclusion here that it would be reasonable to expect corroboration of Zheng's story. As the IJ noted, Zheng's grandparents and uncle are still in China, and lines of communication remained open. Zheng did not submit any corroboration from them. Nor did he submit any school records

6

indicating that he was suspended for writing his essay.[2]

Instead, he submitted letters from two friends, which confirmed the broad outlines of his story. The IJ rejected these letters, in part because neither mentioned Zheng's mother's sterilization: they merely described "My Mother" as "reactionary," without saying that it concerned forced sterilization. Zheng is no doubt correct that the IJ was unreasonable in assuming that Zheng would have told his friends about his mother's sterilization. Nonetheless, we agree with the IJ that these letters have no probative value and, in fact, harm Zheng's case. In particular, one of Zheng's friends, Chang Hong Ye, stated that Zheng called him from the United States in May 2002. In fact, Zheng arrived in this country in June 2002, and was not released from custody until August 2002. His own testimony was that he called Ye "[a] week or two after I could reach my mother's home," i.e., in August 2002. When confronted with this discrepancy, Zheng stated that "it's possible that I made a phone call while in my paternal uncle's home" in China in May 2002. The IJ was entitled to find that Zheng's initial testimony, his later backtracking, and his corroborative evidence were in hopeless conflict, and thus damaged his credibility.

In sum, the IJ was confronted with an inherently implausible story and an applicant who contradicted himself in several places. He therefore looked for supporting evidence, and found a suspicious lack of credible corroboration. Given these facts, we can hardly conclude that "any reasonable adjudicator would be compelled" to disagree with the IJ. 8 U.S.C. § 1252(b)(4)(B). We

---

[2]We are sympathetic to Zheng's argument that the IJ was merely speculating that such records exist, but we note that the Real ID Act largely forecloses it. The Act provides that "[n]o court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." Real ID Act of 2005, § 101(e), Pub. L. No. 109-13, 119 Stat. 231, 305, to be codified at 8 U.S.C. § 1252(b)(4). This provision is effective immediately, and applies to Zheng's petition. *See id.* § 101(h)(3), 119 Stat. at 305-06. We see no compelling reason to believe that such documents would be unavailable, and therefore cannot reverse the IJ on this point.

will therefore uphold the IJ's adverse credibility determination.

### III.

Zheng also raises a CAT claim, arguing that he will be tortured if he is returned to China. To the extent that Zheng claims that he will be tortured for writing "My Mother," the IJ's adverse credibility determination forecloses that claim. To the extent that Zheng claims that he will be tortured for leaving China illegally, we lack jurisdiction to hear his arguments, because he failed to raise them in his appeal to the BIA. *See Abdulrahman*, 330 F.3d at 594-95; *see also* 8 U.S.C. § 1252(d)(1). Furthermore, Zheng has pointed to no evidence, much less compelling evidence, to support his claim that it is more likely than not that he would be tortured on returning to China. *See* 8 C.F.R. § 208.16(c)(2).

For the foregoing reasons, the petition for review will be denied.