[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 28, 2005
THOMAS K. KAHN
CLERK

No. 05-11792
Non-Argument Calendar
_____

Agency No. A95-546-201

JHANER JAHIR GARRIDO,

                                                                    Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                                    Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(September 28, 2005)

Before CARNES, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Jhaner Jahir Garrido petitions for review of the Board of Immigration

Appeals's ("BIA") decision affirming the Immigration Judge's ("IJ") order of

removal and denial of his application for asylum. For the following reasons, we deny the petition.

Garrido, a native and citizen of Colombia, was admitted to the United States on a non-immigrant visitor for business visa with a termination date of May 13, 2002. He remained beyond that date and on September 4, 2002, the Immigration and Naturalization Service ("INS")[1] issued a Notice to Appear charging him with removability under INA § 237 (a)(1)(B), 8 U.S.C. § 1227(a)(1)(B).

Garrido filed, inter alia, an application for asylum, alleging that he had been kidnaped on two occasions by members of the Front for Revolutionary Armed Forces in Colombia ("FARC") because of his political activities in the Liberal Party and told that if he did not obey FARC's orders, he or a member of his family would be killed.[2] He stated that he feared torture and death if he returned to Colombia.

At the hearing before the IJ, Garrido conceded his removability and testified as follows. Garrido was born in Colombia, where his parents, aunt, son, and

---

[1] On November 25, 2002, President Bush signed into law the Homeland Security Act of 2002 ("HSA"), Pub. L. No. 107-296, 116 Stat. 2125. The HSA created a new Department of Homeland Security ("DHS"), abolished the INS, and transferred its functions into the new department. Because this case initiated while the INS was still in existence, this opinion refers to the agency as the INS.

[2] In support of his asylum application, Garrido submitted letters from Colombian National Police indicating the threat FARC posed. He further submitted written notes he had received from FARC warning him to either obey or leave the country. He also attached information from the United Nations and the government on asylum and terrorist activities in Colombia.

eleven siblings remained.  Garrido worked as a truck driver for his father in Iroka, Colombia, and had been involved with the Liberal Party since 1995.  In 1998, while driving a truck in Iroka, he was stopped at a roadblock and kidnaped by FARC members because of his political affiliation.  FARC held him for three days, during which FARC threatened him, tried to brainwash him, and warned him that he or his family would be killed if he disobeyed FARC's orders.  They eventually released him because they wanted to use him to transport guerilla members.  In January 1999, he was kidnaped again under similar circumstances and held for two days during which he was threatened and beaten and instructed to cease his political work or he would not be forgiven.  This time, he was released because FARC needed his services to transport gasoline.  That same year, FARC members called his family and made threats.

To avoid FARC, Garrido relocated to Bogota, which was 22 hours away from Iroka.  In Bogota, Garrido received no calls or threats from FARC.  Although his parents received threats while Garrido was in the United States in 2000, there were no other problems.[3]  Thereafter, Garrido made several trips to the United States, each time returning to Bogota where he thought he would be safe from FARC.  FARC members, however, mailed threatening letters to Garrido's

---

[3] Garrido's father had been detained by the government for over one year, and it appeared that neither Garrido's mother or siblings had received threats during his father's incarceration.

parents's home in Iroka, and Garrido's name was on FARC's "list." When another driver working in Iroka was stopped at a roadblock, FARC members threatened the driver as a warning to Garrido. Thus, Garrido determined that he could not return to Colombia.

The IJ denied asylum and ordered Garrido removed based on clear and convincing evidence. Without specifically explaining whether he found Garrido credible, the IJ nevertheless found that Garrido had not stated a threat of persecution based on a protected activity, as the testimony established that FARC targeted Garrido for his transportation access rather than his political activities. The IJ noted that Garrido was not tortured in Colombia and that he had relocated to Bogota with no problems. Garrido appealed the IJ's determination, and the BIA summarily affirmed. Garrido now petitions this court for review.

Garrido argues that the BIA erred because the evidence established that he suffered past persecution and had a well-founded fear of future persecution based on his political activities should he return to Colombia.[4]

Because the BIA affirmed the IJ's decision without opinion, pursuant to 8 C.F.R. § 3.1(e)(4) (2002), the IJ's decision became the final agency decision

---

[4] Garrido does not argue that the IJ erred by denying his request for withholding of removal. Accordingly, he has abandoned the issue, and this court need not address it. Al Najjar v. Ashcroft, 257 F.3d 1262, 1283 (11th Cir. 2001).

subject to review.[5]  See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir.

2001).  Factual determinations are reviewed under the substantial evidence test,

and we "must affirm the [IJ's] decision if it is 'supported by reasonable,

substantial, and probative evidence on the record considered as a whole.'"[6]  Id. at

1283-84 (internal citation omitted).  This court must defer to the IJ's decision as

supported by substantial evidence, unless the evidence compels a reasonable fact

finder to find otherwise.  INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S.Ct. 812,

815, 117 L.Ed.2d 38 (1992).

    The Attorney General has discretion to grant asylum if an alien is a

"refugee" as defined by the Immigration and Nationality Act ("INA"), INA

§ 208(b)(1), 8 U.S.C. § 1158(b)(1).  The INA defines "refugee" as follows:

> [A]ny person who is outside any country of such person's
> nationality . . .  and who is unable or unwilling to return to, and is

---

[5] Because Garrido's removal proceedings commenced after April 1, 1997, the effective date of IIRIRA, this case is governed by the permanent provisions of the INA, as amended by IIRIRA. Gonzalez-Oropeza v. U.S. Attorney Gen., 321 F.3d 1331, 1332 (11th Cir. 2003).

[6] Congress recently passed the Real ID Act, which altered this court's review of immigration appeals.  This court has not issued an opinion on the application of the Act; however, other circuits have held that the REAL ID Act had altered the standards governing credibility determinations and the need for corroboration of testimony in asylum applications, but that these new provisions did not apply if the alien had filed his application prior to the effective date of the amendments.  See, e.g., Kaur v. Gonzales, 418 F.3d 1061 (9th Cir. 2005); Zheng v. Gonzales, 417 F.3d 379 (3d Cir. 2005); Dhima v. Gonzales, 416 F.3d 92 (1st Cir. 2005).  Cf. Rodriguez Galicia v. Gonzales, 2005 WL 2108688 (7th Cir. 2005) (following other circuits and declining to apply REAL ID Act changes to credibility determinations, but applying new standard of review regarding availability of corroborating evidence).  Because the application of the Act to this case would not change the outcome, we decline to address the issue.

5

> unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

8 U.S.C. § 1101(a)(42)(A) & (B). The asylum applicant bears the burden of proving refugee status. Al Najjar, 257 F.3d at 1284.

To establish asylum eligibility, the alien must, with specific and credible evidence, establish "(1) past persecution on account of a statutorily listed factor, or (2) a well-founded fear that the statutorily listed factor will cause such future persecution." 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. "Demonstrating such a connection requires the alien to present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of such an opinion." Al Najjar, 257 F.3d at 1287 (internal quotation omitted) (emphasis in original). An asylum applicant can not show merely that he has a political opinion, but must show that he was persecuted because of that opinion. Elias-Zacarias, 502 U.S. at 483. The alien's testimony, if credible, may be sufficient to sustain the burden of proof. 8 C.F.R. §§ 208.13(a), 208.16(b). "However, the weaker the applicant's testimony, the greater the need for corroborative evidence." In re Y-B, 21 I&N Dec. 1136, 1139 (BIA 1998).

In Sanchez v. U.S. Attorney Gen., 392 F.3d 434 (11th Cir. 2004), this court set forth the criteria for an alien seeking asylum: "An alien seeking withholding of

6

removal under the INA must show that his life or freedom would be threatened on account of . . . political opinion."[7] The burden of proof rests with the alien, and he must show that "he more-likely-than-not would be persecuted or tortured upon his return to the country in question." Id. at 437.

If the alien can establish past persecution, the presumption is that he would be threatened upon return unless "the INS shows by a preponderance of the evidence that, among other things . . . the alien could avoid a future threat to his life or freedom by relocating to another part of the proposed country of removal, and it would be reasonable to expect him to do so." Id. Even if an alien cannot show past persecution, he may be entitled to asylum relief if he can establish a future threat to his life or freedom based on the protected ground. Id. "An alien cannot demonstrate that he more-likely-than-not would be persecuted on a protected ground if the IJ finds that the alien could avoid a future threat by relocating to another part of his country." Id.

Asylum is available if an alien establishes persecution by the government or by "nongovernmental groups that the government cannot control." Id. at 437-38. As this court has explained, to qualify for withholding of removal based on persecution by a guerilla group on account of a political opinion, Garrido must

---

[7] "Persecution on account of . . . political opinion . . . is persecution on account of the *victim's* political opinion, not the persecutor's." Id. (quoting Elias-Zacarias, 502 U.S. at 482).

establish that FARC persecuted him or will seek to persecute him in the future because of his political opinion. Id. Persecution based on his refusal to cooperate with the guerillas is not sufficient. Id.

Here, we conclude under Sanchez that the BIA properly affirmed the IJ's denial of asylum relief. Garrido failed to establish that he was persecuted because of his political opinion, or that relocating within Colombia would not remove his fear of future persecution. Garrido's own testimony established that FARC threatened him to use his access to transportation. Additionally, the fact that he was stopped at a roadblock suggests that the threat was more random and that FARC did not target Garrido. See Rodriguez v. Attorney Gen., 2005 WL 2090638 (11th Cir. Aug. 31, 2005) (unpublished). Moreover, Garrido was able to avoid FARC's threats by relocating to Bogota, 22 hours away from Iroka where he had been kidnaped. According to Garrido's own testimony, FARC never carried out the threats, and his family has had no problems since the kidnaping several years ago. Finally, given that Garrido returned to Bogota several times, the IJ properly concluded that relocation was a viable option. Therefore, substantial evidence supports the IJ's determination that Garrido failed to establish past persecution or a well-grounded fear of future persecution. Accordingly, we DENY the petition.