**Linda Lienardy LIE; Phoe Pek Jan, Petitioners**

v.

**ATTORNEY GENERAL OF the UNITED STATES, Respondent.**

No. 07–1801.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) April 2, 2008.

Filed: April 9, 2008.

Michael S. Henry, Law Offices of Michael S. Henry, LLC, Philadelphia, PA, for Petitioners.

Carl H. McIntyre, Jr., Edward J. Duffy, Justin R. Markel, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: AMBRO, FISHER and JORDAN, Circuit Judges.

## OPINION

PER CURIAM.

Linda Lienardy Lie and Phoe Pek Jan petition for review of an order of the Board of Immigration Appeals ("Board" or "BIA"). The Board's order adopted and affirmed the decision of an Immigration Judge ("IJ"), which found the petitioners removable and denied their applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT).[1] For the reasons that follow, we will deny the petition.

## I.

Phoe Pek Jan entered the United States as a visitor in January 2001; her daughter Linda Lienardy Lie entered as a visitor in May 2002. Both stayed longer than they

---

1. In this appeal, the petitioners challenge only the denial of withholding of removal. Thus, we will not discuss the denial of asylum and protection under the CAT.

We also note that the IJ granted both petitioners voluntary departure, and the BIA like-wise gave the petitioners 60 days from the date of its order within which to voluntarily depart. Petitioners did not seek a stay of the voluntary departure period in this court.

were authorized and both filed applications for asylum and related relief on September 4, 2003. Petitioners, who are Chinese Buddhist citizens of Indonesia, claimed they were persecuted in the past in Indonesia based on their ethnicity and religion. Jan submitted an affidavit noting that there was unrest in their hometown of Balikpapan between the Dayak and the Madura ethnic groups, and that ethnic Chinese were often harmed as a consequence. A.R. 258. Jan noted that on August 15, 1990, there was a conflict between the Dayak and Madura groups, and that the Madura people burnt and ransacked Jan's house and shop. The Madura people also beat her husband badly and beat her as well. Her husband had to be hospitalized, and died about a month later from a heart attack. A.R. 259. Jan only received a few bruises from the beating. *Id.* Lie's affidavit also recounted the incident in August 1990, and it noted later incidents in which strangers had touched her breast and buttocks in public. A.R. 23–24.

In a hearing before an IJ, Jan testified that she did not know what caused the fight between the Madura and Dayak, and that she did not know why her home was attacked. A.R. 195–96. She also testified that she opened a coffee house in her home in 1994 and ran it for about three years, but closed it after four men came into the shop and tried to attack her. A.R. 200. They ran away after knocking her down. *Id.* She testified she did not know why they broke in. A.R. 201.

The IJ found that Petitioners' asylum applications were time-barred.[2] The IJ found Petitioners credible, but stated that even if the asylum applications had been timely, he "would not find that the actions taken individually or cumulatively against either respondent ... would in any way be severe enough and with an adequate nexus to establish past persecution...." A.R. 152. The IJ found nothing in the record that would indicate that the Petitioners would be singled out for persecution if they returned to Indonesia, and also concluded that substantial evidence in the record would not support a finding that there is a pattern or practice of persecution of ethnic Chinese in Indonesia. A.R. 153–54. The IJ therefore denied the request for withholding of removal.[3]

On appeal, the Board indicated that Petitioners presented "sympathetic circumstances," but did not find the IJ's findings of fact to be clearly erroneous. A.R. 2. The Board also specifically noted that the IJ did not err "in concluding that the respondents did not adequately demonstrate that either had been a victim of past persecution on a ground protected under the Act." *Id.*

## II.

We have jurisdiction to review final orders of removal under section 242(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1252(a)(1), as amended by the REAL ID Act of 2005. When the Board issues a decision on the merits, we generally review only the Board's order. *See Li v. U.S. Attorney General,* 400 F.3d 157, 162 (3d Cir.2005); *Abdulai v. Ashcroft,* 239 F.3d 542, 548–49 (3d Cir.2001). Where the Board adopts the reasoning of the IJ with some discussion of the bases for the IJ's decision, we also review the order of the IJ. *Chen v. Ashcroft,* 376 F.3d 215, 222 (3d Cir.2004). We use a substantial evidence standard to review factual findings, *Tarrawally v. Ashcroft,* 338 F.3d 180, 184 (3d

---

2. Petitioners do not contest this finding.

3. The IJ also denied the request for protection under the CAT.

Cir.2003), as well as findings of an applicant's past persecution or "well-founded fear of future persecution," *Gao v. Ashcroft,* 299 F.3d 266, 272 (3d Cir.2002). Under the substantial evidence standard, findings are upheld "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Zheng v. Gonzales,* 417 F.3d 379, 381 (3d Cir.2005).

Petitioners raise two issues on appeal. First, they argue that they suffered past persecution, and therefore benefit from a rebuttable presumption that they will suffer persecution in the future. Second, they argue that the Board erred in concluding that they failed to establish a "pattern or practice" against ethnic Chinese in Indonesia.

■ Although the incidents that occurred in Indonesia, particularly the beating that led to the death of the husband and father of Petitioners, was very tragic, we cannot say that a reasonable factfinder would be compelled to find that the beating occurred on account of a protected ground, such as race or religion. Indeed, Jan testified that she did not know why the fight occurred, nor why her home was attacked. We further can find no fault in the IJ's finding that Petitioners did not show that they would be singled out for persecution in the future.[4]

■ Petitioners also argue that they will face a pattern or practice of persecution against ethnic Chinese if they are returned to Indonesia. However, Petitioners did not challenge the IJ's finding that there was no pattern or practice of persecution of ethnic Chinese Buddhists in Indonesia in their brief to the Board. A.R. 91–97.[5] Thus, this claim is unexhausted, and we lack jurisdiction to review the claim. *Abdulrahman v. Ashcroft,* 330 F.3d 587, 594–95 (3d Cir.2003).

For the foregoing reasons, we will deny the petition for review.

---

4. In fact, "Petitioners do not contend that they would be singled out for persecution if they were to return to Indonesia." Petitioners' Brief at 15.

5. In their "Respondents' Reasons for Appeal," Petitioners stated, "There is no requirement for withholding that the applicant provide evidence that he or she would be singled out individually for such persecution if the applicant establishes that there is a pattern or practice in the country involved of persecuting persons similarly situated to the applicant, and the applicant establishes his or her own inclusion in and identification with such group. 8 C.F.R. §§ 208.16(h) and 1208.16(h)." However, this document did not provide any argument in support of a claim that Indonesia has a pattern or practice of persecuting ethnic Chinese, and Petitioners' actual brief to the BIA did not mention the pattern or practice claim whatsoever. The passing mention in the "Reasons for Appeal" was not sufficient to alert the Board that Petitioners challenged the IJ's holding on this issue.