OPINION
PER CURIAM.
Petitioner Lei Wang, a 31-year-old male citizen of China, was admitted to the Unit *683 ed States in September 2005 with a visitor’s visa. He overstayed the visa and was placed in removal proceedings. Before the IJ, Wang admitted the charge and conceded removability, but sought asylum, withholding of removal, relief under the Convention Against Torture (“CAT”), and voluntary departure.
I
As grounds for relief, Wang claimed that he had suffered past persecution because he and his wife had resisted China’s family planning policies, and that he reasonably feared that he would be sterilized if he returned to China and continued to resist those policies. Specifically, Wang alleged that after his first child was born in 2003, his wife was forced by family planning officials to have an IUD inserted and submit to quarterly checkups. Although Wang’s wife allegedly went to her first few checkups, Wang provided no corroborative evidence that his wife ever did so. Wang and his wife later paid a private doctor to remove the IUD, and when Wang’s wife became pregnant again, she went into hiding.
Wang testified that while his wife was in hiding, local family planning officials repeatedly visited his home and demanded that his wife submit to a checkup. He stated that when she did not come out of hiding, officials contacted executives at the government-run power plant where Wang worked as an engineer to pressure him into revealing his wife’s location. Wang refused and was fired as a result. Although Wang stated in his asylum application that he was fired in April 2005, he testified before the IJ that he was fired in February 2005. When the IJ asked about the inconsistency, Wang explained that there must have been a mistake in the preparation of his asylum affidavit.
In addition, Wang produced no documentation showing either that he was fired from the power plant or, indeed, that he ever began and ceased working there. Wang explained to the IJ that he was not given documentation about the firing. He also gave varying explanations about whether he could obtain records of employment, and noted that his wife tried and failed to obtain such records — a claim itself not corroborated in her letter of support.
After he was fired, Wang went into hiding with his wife at her uncle’s home. He testified that in April 2005, family planning officials raided the home and abducted his wife. He testified that she was taken to a local hospital and forced to have an abortion. Although the IJ noted that it is reasonable to assume a hospital might not offer documentation that a patient endured a forced abortion, he also pointed out that Wang provided no corroborating evidence, such as hospital admission records, that the incident ever happened.
Wang claimed that the forced abortion traumatized his wife and they sought the help of a private doctor to treat her resulting depression. However, Wang offered no evidence to show that his wife sought medical treatment for depression or received medication, and his wife did not mention any depression in her letter.
Wang alleged that his retaliatory firing for opposing China’s family planning policies, as well as his wife’s forced abortion, constituted past persecution entitling him to relief. The IJ reasoned that both Wang’s firing for resistance to China’s family planning policies and his status as the spouse of a person allegedly forced to undergo an abortion rendered him eligible for asylum and other relief, but made an adverse credibility determination and noted Wang’s failure to present corroborative evidence. Accordingly, the IJ denied all relief.
On appeal, the BIA upheld the IJ’s determinations that Wang was incredible and *684 that he failed to submit sufficient corroborative evidence, and noted that intervening case law rendered Wang ineligible for relief based on his spousal status. Wang then filed a petition for review and a motion to stay removal. The Government filed a response and motion for summary affirmance.
II
We have jurisdiction pursuant to 8 U.S.C. § 1252. Because the BIA issued its own opinion, we review its decision rather than that of the IJ. See Li v. Att’y Gen., 400 F.3d 157, 162 (3d Cir.2005). However, we also look to the decision of the IJ to the extent that the BIA defers to or adopts the IJ’s reasoning. See Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir.2006). We review agency factual determinations, including an adverse credibility determination, for substantial evidence, and will uphold such determinations unless any reasonable adjudicator would be compelled to reach a contrary conclusion. See Fiadjoe v. Att’y Gen., 411 F.3d 135, 153 (3d Cir.2005).
At the outset, we note our agreement with the BIA’s determination that Wang was ineligible for relief based on his spousal status. As the BIA noted, Matter of JS-, 24 I. & N. Dec. 520 (A.G.2008), was issued after Wang’s removal hearing. In J-S-, the Attorney General held that spouses of individuals forced to undergo abortions or sterilization procedures are not per se entitled to refugee status under IIRIRA § 601(a). Id. at 523-24. We have reached the same conclusion. See Lin-Zheng v. Att’y Gen., 557 F.3d 147, 157 (3d Cir.2009) (en banc).
In denying relief, the IJ found Wang to be incredible and held that his claims were also undermined by his failure to present corroborative evidence. Because Wang’s asylum application was filed in June 2006, his petition is governed by the REAL ID Act of 2005. Prior to the implementation of the REAL ID Act, minor inconsistencies that did not go to the heart of an asylum applicant’s claim were inadequate to support adverse credibility determinations. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir.2002). In contrast, the REAL ID Act permits credibility determinations based on, inter alia, inconsistencies that do not go to the heart of the alien’s claim. See 8 U.S.C. § 1158(b)(l)(B)(iii). We have not applied the REAL ID Act standard in a precedential opinion. Here, because the inconsistencies identified by the IJ relate to the heart of Wang’s claims for relief, and would thus support an adverse credibility determination even under the pre-REAL ID Act standard, we need not consider whether 8 U.S.C. § 1158(b)(l)(B)(iii) is consistent with due process. See Wang v. Holder, 569 F.3d 531, 538 (5th Cir.2009) (canvassing Circuit law on the provision).
The IJ identified the following inconsistencies: discrepancies in Wang’s story about when he was fired; different explanations about whether he could obtain documentation to demonstrate that he was fired; and varying explanations about what circumstances might lead to his forced sterilization. With regard to when he was fired, Wang explained that the April 2005 date listed on his asylum application was a mistake. The IJ, however, was unpersuaded. Wang argues that he does not read or write English and that the discrepancy resulted from an error committed by the individual preparing his 1-589, and also notes that the letters from his relatives confirm that he was fired in February 2005. As the IJ noted, however, the letters from Wang’s relatives are un-sworn and come from interested parties. Even if they carry some persuasive weight, we are not compelled to disagree with the IJ, who had the opportunity to evaluate Wang’s limited explanation and *685 found it lacking. We also agree that Wang’s inconsistent answers as to why he could not obtain documentation that his employment had ended support the IJ’s determination.[1]
In any event, we also agree that the IJ and BIA plausibly relied on Wang’s failure to present documentary corroboration. A denial of relief may be grounded on a failure to corroborate when “(1) the IJ identifies facts for which it is reasonable to expect the applicant to produce corroboration, (2) the applicant fails to corroborate, and (3) the applicant fails to adequately explain that failure.” Chukwu v. Att’y Gen., 484 F.3d 185, 191-92 (3d Cir.2007) (citing Abdulai v. Ashcroft, 239 F.3d 542, 554 (3d Cir.2001)). In this case, the IJ faulted Wang for failing to present corroborative evidence that (1) he was fired for hiding his wife; (2) his wife was subjected to a forced abortion; (3) his wife was treated for depression as a result of her forced abortion; and (4) that his wife was subjected to quarterly checkups following the forced abortion. We agree with the IJ and BIA that Wang could have obtained certain corroborative documents to support aspects of his claim, but failed to either obtain them or explain why he did not. Therefore, we must uphold the denial of Wang’s requests for asylum, withholding of removal, and CAT protection.
For these reasons, we will grant the Government’s motion and summarily deny the petition for review. Wang’s motion for a stay of removal is also denied.

. However, we disagree with the IJ’s analysis that Wang's testimony about forced sterilization was inconsistent. Although Wang’s explanation of when officials might subject people to forced sterilization lacked clarity, he appears to have made the same claim repeatedly — i.e., he was unaware of exactly how many pregnancies a couple must have before authorities will impose sterilization, but feared that, having impregnated his wife twice before, he is likely to face sterilization if she becomes pregnant again. To the extent that the IJ's analysis was flawed concerning the sterilization claim, however, we are not compelled to reject the adverse credibility determination given Wang's other inconsistencies. See Zheng v. Gonzales, 417 F.3d 379, 382 (3d Cir.2005) (”[W]e are bound to uphold the IJ’s [adverse credibility] decision if it is supported by substantial evidence, and may do so even if we reject some of its bases.”).