DLD-226                                                      NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3773
_____

DAVE SILVESTER PIERRE, a/k/a David Pier, a/k/a
David Piere, a/k/a David S. Pierre, a/k/a Lionel A. Escobar,

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

Dave Silvester Pierre,
Petitioner
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A036-803-804)
Immigration Judge: Walter A. Durling
_____

Submitted on a Motion for Summary Action
Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
May 2, 2013

Before: AMBRO, SMITH and CHAGARES, Circuit Judges

(Opinion filed: June 5, 2013)
_____

OPINION
_____

PER CURIAM

Dave Silvester Pierre ("Pierre") petitions for review of the Board of Immigration Appeals' final order of removal. For the reasons that follow, we will grant the Attorney General's motion for summary action and summarily deny the petition.

Pierre, a native and citizen of Antigua and Barbuda, was previously removed from the United States in 1993 for several crimes, including drug trafficking. Upon returning to Antigua, Pierre was detained for three months and released when his sister, a United States citizen living in St. Croix, posted bail. He used his "green card" to enter the Virgin Islands, where his family lives. Eventually, he returned to New Jersey. On March 30, 2009, the Department of Homeland Security reinstated the prior order of removal, and Pierre pleaded guilty to unlawful re-entry, in violation of 8 U.S.C. § 1326(a), and was imprisoned for 18 months.

After Pierre was unable to establish that he had acquired citizenship through his naturalized mother,[1] he sought protection under the Convention Against Torture, claiming that he likely would be tortured in Antigua because he had been beaten and raped while in custody the last time he was removed there. On May 10, 2012, Pierre appeared in Immigration Court and testified that he was physically abused by prison guards and other prisoners, which included being raped by another prisoner and being beaten by prison guards with their fists and batons. He received treatment for an injury to his leg after his release. He testified that he fears being tortured if he is removed again because he is likely to encounter the same mistreatment by prison authorities. He has no family ties to Antigua and will be viewed as a

---

[1] Pierre's mother was naturalized on June 13, 1988 but Pierre was 22 years old at the time and was therefore unable to derive citizenship through her.

2

criminal deportee. In support of his claim, Pierre's sister testified over the telephone that he appeared bruised and beaten when she freed him from the Antiguan prison in 1993, and that he informed her that he had been raped.

The Immigration Judge denied CAT relief and ordered Pierre's removal to Antigua. The IJ found that Pierre was not believable because his testimony was self-serving and unpersuasive, and it conflicted with the Asylum Officer's October 1, 2010 Record of Sworn Statement ("ROSS"), in which it was reported that Pierre repeatedly denied having any problems while he was detained in a holding facility in Antigua. His testimony also conflicted with a March 30, 2009 ROSS, in which it was reported that he denied any fear of persecution or torture if removed to Antigua, and with a Reasonable Fear Determination dated October 20, 2010. In addition, even when asked during his Reasonable Fear hearing on May 31, 2011, Pierre never mentioned that he had been raped. When asked if he had been mistreated, his answer was vague and rambling. The IJ further determined that Pierre's case was not rehabilitated by his sister's testimony because, in pertinent part, her testimony did not explain why Pierre, when he had numerous opportunities to inform various immigration authorities that he suffered abuse in Antigua in 1993, failed to do so.

The IJ also concluded that Pierre's background evidence did not corroborate his assertion that criminal deportees are subjected to torture by or with the acquiescence of the government of Antigua. The IJ pointed out that the background materials, although they show overcrowding and poor prison conditions, also show that the government does not tolerate abusive behavior by prison guards, and international human rights organizations have ready access to the prison. The IJ specifically discussed an affidavit from Donald Anthonyson,

3

which notes that deportees are stigmatized by Antiguan society and which affirms tough prison conditions.

Pierre appealed to the Board of Immigration Appeals. On September 12, 2012, the Board dismissed the appeal. It held that, in light of the adverse credibility determination, which the Board found was fully supported by the record, Pierre failed to show that he was tortured in the past or likely would be tortured in the future in Antigua.

Pierre timely petitions for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). We previously denied his motion for a stay of removal. After Pierre filed a two-page opening brief, the Attorney General moved for summary denial of the petition for review. Pierre has responded in opposition to the motion. In his opening brief, Pierre argues that the statement he made in 2009 was made under the stress of having been taken into custody by immigration authorities after living freely in the United States for a period of 15 years (following his illegal re-entry). He answered questions without thinking about them. Moreover, he contends, the IJ did not take the time to look into his case. In his response to the motion for summary denial, he argues that the agency erred in determining the "government acquiescence" issue, and in ignoring the evidence from his sister and his Antigua expert, Donald Anthonyson, and he argues that he has no family in Antigua because his family moved to the Virgin Islands after he was born.

We will grant the Government's motion and summarily deny the petition for review because no substantial question is presented by it, Third Circuit LAR 27.4 and I.O.P. 10.6. To qualify for protection under the CAT, an applicant bears the burden of showing that it is more likely than not that he would be tortured if removed to the proposed country of removal. 8

4

C.F.R. § 1208.16(c)(2); Kamara v. Att'y Gen. of U.S., 420 F.3d 202, 212-13 (3d Cir. 2005). For an act to constitute torture, it must be: (1) an act causing severe physical or mental pain or suffering; (2) intentionally inflicted; (3) for a proscribed purpose; (4) by or at the instigation of or with the consent or acquiescence of a public official who has custody or control of the victim; and (5) not arising from lawful sanctions. Id. at 213; 8 C.F.R. § 1208.18(a)(1)-(8). The "acquiescence of a public official" requirement does not require actual knowledge of torturous conduct, but can be satisfied by a showing that the government is willfully blind to the conduct in question or has breached its legal responsibility to prevent it. Silva-Rengifo v. Att'y Gen. of U.S., 473 F.3d 58, 70 (3d Cir. 2007). An applicant's criminal convictions in the United States are not a bar to deferral of removal under the CAT, 8 C.F.R. § 1208.17(a).

Where the Board substantially relies on the IJ's adverse credibility determination, we review both decisions. See Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). We must consider the record as a whole and may reverse only if "any reasonable adjudicator would be compelled" to reach a conclusion contrary to that of the agency. 8 U.S.C. § 1252(b)(4)(B). The IJ may consider the totality of the evidence in finding a lack of credibility, and inconsistencies need not go to the heart of the claim. 8 U.S.C. § 1158(b)(1)(B)(iii). See also Kaita v. Att'y Gen. of U.S., 522 F.3d 288, 296 n.6 (3d Cir. 2008) (same).

We are not compelled to reach a conclusion contrary to that of the agency in Pierre's case because Pierre had a full and fair hearing, and the concerns noted by the agency are substantial and seriously undermined Pierre's credibility. In affirming the IJ, the Board properly considered Pierre's testimony and that of his sister, expressly discussed the evidence in some detail, and explained why it found no error in the IJ's adverse credibility

5

determination. The Board observed that Pierre's testimony regarding his past treatment in Antigua conflicted with other sworn statements he had made, including a statement to an Asylum Officer in October 2010, in which he repeatedly stated that he had no problems while he was detained in a holding facility in Antigua. In his 2009 statement, he indicated that he had no fear of persecution or torture should he be removed from the United States. In the October 10, 2010 Reasonable Fear Determination he was reported to have stated that he stayed by himself during the 2½ months that he was held in the holding facility.

The Board properly rejected Pierre's attempt to explain away the inconsistencies between his prior statements and in-court testimony. During his hearing Pierre was given the opportunity to explain the inconsistency between his 2009 statement and his testimony, but the IJ found his explanation self-serving. His argument on appeal that he answered questions in 2009 without thinking about them does not persuade us that this finding is unreasonable. Moreover, the Board validly rejected the testimony of Pierre's sister on the ground that the sister's testimony did not overcome Pierre's failure to mention being raped or assaulted during his interviews. Last, Pierre's background evidence plainly did not corroborate his assertion that criminal deportees are subjected to torture by or with the acquiescence of the government of Antigua. As explained by the IJ, the Anthonyson affidavit affirms tough prison conditions but does not attribute them to any particular reason much less any intent by Antiguan prison authorities to inflict severe pain or suffering. Accordingly, Pierre did not demonstrate that it is more likely than not that he would be tortured for any reason in Antigua, 8 C.F.R. § 1208.16(c). See Zheng v. Gonzales, 417 F.3d 379, 383 (3d Cir. 2005) (denying petition for review where "the IJ's adverse credibility determination forecloses [the CAT] claim").

6

For the foregoing reasons, we will grant the Attorney General's motion for summary action and summarily deny the petition for review.