NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1581
_____

OM PRAKASH CHHETRI,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES OF AMERICA,

Respondent
_____

On Petition for Review of a Final Order
of the Board of Immigration Appeals
(Agency No. A205-730-757)
Immigration Judge: Honorable Miriam K. Mills
_____

Submitted Under Third Circuit LAR 34.1(a)
January 20, 2016

Before:  JORDAN, HARDIMAN and GREENAWAY, JR., *Circuit Judges*.

(Filed: January 20, 2016)

_____

OPINION*

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

———————

HARDIMAN, *Circuit Judge*.

Om Prakash Chhetri petitions for review of an order of the Board of Immigration Appeals (BIA) denying his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Because the BIA's order is supported by substantial evidence, we will deny the petition.

I

Chhetri is a native and citizen of Nepal. He entered the United States in November 2012 without documentation and was detained by the Department of Homeland Security (DHS). DHS charged Chhetri as removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and he conceded removability.

Chhetri applied for asylum, withholding of removal, and relief under CAT. In support of his application, Chhetri claimed that he fears returning to Nepal because he is at risk of being harmed or killed by Nepalese Maoists. He testified as follows: In 2008, he became a member of the Nepali Congress Party (NCP) and took active part in its political efforts. As a result, he was targeted by Maoists who threatened to kill him if he did not leave the NCP. Chhetri refused. Thereafter, he was twice beaten by Maoists and was treated at a hospital. Chhetri reported the incidents to the police, but no action was taken

2

because the Maoists were in power. At the behest of his parents, Chhetri fled to the United States.

As documentary support for his testimony, Chhetri submitted, among other things, his Nepalese birth certificate, a letter from the NCP recognizing him as an active member, a September 9, 2013 letter from Bir Hospital certifying that he was admitted on April 28, 2011, a September 9, 2013 letter from Om Hospital certifying that he was admitted on September 16, 2011, and a threatening letter from the Young Communist League (YCL). Both hospital letters and the NCP letter were written only in English. Although the letter from the YCL was translated from Nepali into English, it did not contain a statement that the translator is competent in both languages as required by 8 C.F.R. § 1003.33.

During removal proceedings, the Immigration Judge (IJ) questioned Chhetri. She expressed concern that the hospital letters were written in English rather than Nepali and that several of the translated documents were not properly certified. She also challenged Chhetri's testimony that he had personally received the Om Hospital letter at his house in Nepal on the ground that the letter was dated September 9, 2013—almost a year after he left Nepal for the United States. Chhetri altered his testimony in response, asserting that his parents—not he—had received the letter.

The IJ denied Chhetri's application for two reasons. First, she "did not find [Chhetri] to be credible." App. 66. She based this finding on his "inherently improbable"

3

testimony that he had personally received the Om Hospital letter at his house in Nepal in September 2013 after he had admitted to leaving Nepal for the United States in October 2012. *Id*. Second, she found his documentary evidence unreliable and therefore insufficient to corroborate his testimony. None of the documents "la[id] a reliable foundation" to establish his identity, political party affiliation, or employment because each document was either written only in English or was a translation that lacked proper certification. App. 67. With respect to his CAT claim, she added a third reason—that, "[i]n light of Nepal's changed country conditions, [Chhetri did not establish] that he would more likely than not, be specifically targeted for torture in Nepal, with government complicity."[1] *Id.*

The BIA found no clear error in the IJ's reasoning and dismissed Chhetri's appeal. Regarding the IJ's adverse credibility finding, the BIA agreed that the "serious inconsistency" in Chhetri's testimony about who had received the Om Hospital letter "fatally undermined" his credibility. App. 3. As for the IJ's finding that Chhetri's documentary evidence was unreliable, the BIA agreed that the fact that several of the documents were written only in English was "suspicious" and noted that "the great majority" of the documents "were not properly translated." App. 4. The BIA concluded

---

[1] The IJ also found that changed country conditions defeated Chhetri's claims for asylum and withholding of removal. Because the BIA expressly declined to reach that alternative holding, we do not review it. *See, e.g.*, *Fiadjoe v. Att'y Gen.*, 411 F.3d 135, 152–53 (3d Cir. 2005) (explaining that we review only the BIA's adverse credibility finding except where the BIA "must have relied upon" the IJ's analysis).

4

that Chhetri's persecution claim "lack[ed] veracity" and upheld the IJ's denial of asylum and withholding of removal. *Id.* It also summarily affirmed the IJ's denial of CAT protection. Chhetri timely petitioned for review.

II

The BIA had jurisdiction under 8 C.F.R. § 1003.1(b)(3). We have jurisdiction under 8 U.S.C. § 1252(a). We review the BIA's factual findings, including adverse credibility determinations, for substantial evidence. *Butt v. Gonzales*, 429 F.3d 430, 433 (3d Cir. 2005). Accordingly, we will uphold factual conclusions "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We review the IJ's findings under the same standard to the extent "the BIA directs us to the [IJ's] opinion and decision." *Yusupov v. Att'y Gen.*, 650 F.3d 968, 977 (3d Cir. 2011) (quoting *Shah v. Att'y Gen.*, 446 F.3d 429, 434 (3d Cir. 2006)).

A

Chhetri first argues that the BIA erred in upholding the IJ's adverse credibility determination. He claims his statement that he received the Om Hospital letter at his house in Nepal was a misstatement and that the context provided by the rest of his testimony reveals the mistake to be an honest one. Chhetri insists that it is clear that what he meant to say was that he had seen a medication list, not the Om Hospital letter, as he "clarified repeatedly" after realizing his error. Citing caselaw for the proposition that the BIA is required to evaluate an applicant's explanation for testimonial inconsistencies,

5

*see, e.g.*, *Fiadjoe*, 411 F.3d at 160, he contends that the BIA erred by not considering his explanation and that any reasonable adjudicator would have been persuaded by it.

We cannot say that any reasonable adjudicator would have found differently than the IJ and the BIA. As an initial matter, the BIA considered Chhetri's explanation when it found "no clear error in [the IJ's] finding that [Chhetri] did not reasonably explain th[e] implausibility" in his testimony.[2] App. 4. And what Chhetri calls "clarified" testimony could reasonably be called "backtracking." Chhetri wasn't asked merely in passing whether he had received medical records at his house in Nepal. Rather, he was twice shown a copy of the Om Hospital letter and testified:

Q: And you're telling me that that document you've seen before?

A: Yes.

Q: It was served to you at your house when you were in Nepal?

A: Yes.

. . .

Q: [Y]ou remember receiving that when you were in Nepal?

A: Yes.

App. 143, 146. Chhetri's claim that he misidentified the document is hard to accept given that he was looking at a copy of the Om Hospital letter when he twice identified it. In

---

[2] For her part, the IJ confirmed that she "considered the arguments of both parties and the entire record carefully" before deciding that Chhetri was "[unable] to explain" the inconsistency in his testimony. App. 66.

addition, he made no attempt to correct his testimony until the IJ pointed out the inconsistency.

In light of these facts, Chhetri's credibility remained in doubt even after his explanation. *See Zheng v. Gonzales*, 417 F.3d 379, 383 (3d Cir. 2005) (upholding the IJ's adverse credibility determination where the IJ was confronted with "inherently implausible" testimony from "an applicant who contradicted himself" and presented "a suspicious lack of credible corroboration"). We therefore find no error in the BIA's decision to uphold the IJ's adverse credibility determination.

B

Chhetri next argues that the BIA erred in affirming the IJ's conclusion that he failed to independently corroborate his testimony through documentary evidence. He focuses this argument on the BIA's treatment of the English documents he submitted.[3] He contends that the IJ rejected all of these documents for either speculative reasons or no reason at all. Most objectionably, Chhetri argues, the IJ speculated that the Om Hospital letter would not have been written in English after he had explained that Nepali hospitals routinely use English to write medical records, such as prescriptions. He then argues that the BIA compounded the IJ's error by using her shoddy reasoning to discount all of his English documents.

---

[3] During removal proceedings, counsel for Chhetri acknowledged that the documentary evidence originally written in Nepali was not properly translated under 8 C.F.R. § 1003.33. Chhetri does not challenge the BIA's treatment of those documents.

We cannot say that any reasonable adjudicator would have looked more favorably on Chhetri's English documents than the BIA. First, the IJ reasonably doubted the veracity of the Om Hospital letter. The record supports her position that that letter could be expected to be written in Nepali since that is the official language of Nepal and several of Chhetri's other documents were written in it. *See Gabuniya v. Att'y Gen.*, 463 F.3d 316, 321 (3d Cir. 2006) (explaining that the record must reasonably ground presumptions used to make adverse credibility findings in order to receive deference). These reasons are broad enough to support the BIA's application of the IJ's presumption to all of Chhetri's English documents.

Nor has Chhetri persuasively rebutted the presumption. The explanation he offered as to why English was used instead of Nepali speaks only to the hospital letters and is speculative itself. For example, during removal proceedings, he testified:

Q:   Can you tell me why the [Om Hospital] letter is in English, written in the English language?

A:   *Most* of Nepal's hospitals administer the medication prescriptions in English and that's why *maybe* they wrote the letter in English, too.

. . .

Q:   Oh. Why would they write a prescription in English if that's not the official language of the country?

A:     *Perhaps* the, the medicines are, medicines have English name[s] and they cannot be transcribed in Nepali and the reason *could* be that the doctors are foreign-educated and they write in English.

App. 147 (emphasis added).

On appeal, Chhetri adds that because the letterheads on many of his documents are written in English, it follows that English is widely used among Nepali institutions. However, this fact could reasonably be viewed as a symptom of the same fundamental infirmity—the use of English rather than Nepali gives reason to doubt the authenticity of the letterheads.

Of course, even if Chhetri's explanation were plausible, his testimony would not necessarily establish the reliability of the documents because he was found not credible. *Cf. Lusingo v. Gonzales*, 420 F.3d 193, 199 (3d Cir. 2005) (noting that an applicant's credible testimony may support his claims where documentary evidence is lacking). We therefore find no error in the BIA's determination that Chhetri's documentary evidence was unreliable and not corroborative.

C

Chhetri's final argument pertains to his CAT claim. He argues that any reasonable adjudicator would conclude that the record shows "it is more likely than not" he will be tortured if removed to Nepal. In support, he again offers testimony and documentary evidence indicating that he was beaten by Maoists and hospitalized in the past, as well as

a report issued by the United States State Department confirming that, in 2012, the Nepalese police did not investigate certain incidents of violence involving Maoists for fear of retribution.

This argument can be rejected in short order. As an initial matter, the BIA's adverse credibility and reliability determinations—which doomed Chhetri's asylum and withholding of removal claims—bear on his CAT claim as well. This is because the BIA affirmed the IJ on this issue "for the reasons she provided in her decision", App. 5, and the IJ found that Chhetri failed to establish a credible or corroborated claim "for any of the requested relief", App. 66. Furthermore, Chhetri's objectively reliable evidence— consisting entirely of the State Department report—falls far short of establishing that he is likely to be tortured if removed to Nepal.

III

For the reasons stated, we will deny Chhetri's petition for review.