

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-8-2008

# Riyana v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2129

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Riyana v. Atty Gen USA" (2008). *2008 Decisions.* Paper 883.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/883

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 07-2129

———

DADAN RIYANA,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

———

Petition for Review of a Final Order of
The Board of Immigration Appeals
(BIA File No. A96-203-824)

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 13, 2008

Before: McKEE and ROTH, <u>Circuit Judges</u>, and PADOVA,*
<u>Senior District Judge</u>.

(Filed: July 8, 2008)

———

OPINION OF THE COURT

———

_____
*The Honorable John R. Padova, Senior United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

PADOVA, *Senior United States District Judge*.

Petitioner, Dadan Riyana, seeks review of the decision of the Board of Immigration Appeals ("BIA") dismissing his applications for asylum and withholding of removal. For the following reasons, the Petition will be denied.

## I.

Riyana is an adult, male citizen of Indonesia. He entered the United States on or about June 28, 2001, on a non-immigrant B1 business visitor's visa, with permission to remain until September 27, 2001. On September 19, 2001, he requested an extension, which was granted on March 14, 2002, and gave him authorization to remain in the United States until March 27, 2002. Riyana sought a second extension on his visa, but that request was denied on September 18, 2002. On October 30, 2003, the Immigration and Naturalization Service (now the Department of Homeland Security ["DHS"]) charged Riyana with violating the Immigration and Nationality Act ("INA") § 237(a)(1)(B), and ordered him to appear before an immigration judge ("IJ").

Riyana initially appeared before an IJ on October 28, 2004, and admitted to the charges alleged by DHS. Riyana advised the IJ at this proceeding that he intended to submit applications for asylum, withholding of removal, protection under the Convention Against Torture ("CAT"), and, in the alternative, voluntary departure. Riyana filed these applications on December 23, 2004. At a hearing the same day, the IJ instructed Riyana to submit any additional evidence and briefing regarding his qualifications for an

-2-

exception to the one-year deadline from the date of arrival in the United States for the filing of asylum applications.

A hearing on the merits of Riyana's applications was held on December 8, 2005, before a different IJ. At this hearing, the IJ admitted the following exhibits: (1) the notice to appear; (2) the asylum application; (3) Riyana's passport and birth certificate; (4) a State Department Country Report on Human Rights Practices in Indonesia (the "Country Report"), and (5) two internet articles submitted by Riyana. Only Riyana testified at the hearing.

During the hearing, when asked why he had not filed his asylum application until over three years after his arrival in the United States, Riyana responded, "Because I did not know about the law in this country." Riyana also testified to the following facts. He received his bachelor's degree in civil engineering from the University of Science and Engineering National in Indonesia. He filed his asylum application because he fears persecution as a result of having been an activist and, more specifically, a member of FORKOT, a student organization that advocated reforms in Indonesia's government. Riyana claimed that due to his membership in FORKOT, he received telephone threats between 1998 and 2000, in which "some individuals wanted to capture [him] and kidnap [him]." He testified that the individuals who called him stated: "If you still wish to live here you must not express your voices about reformation." Riyana could not identify the person or persons who threatened him, but he stated that he believed they were from the

Indonesian government. Riyana also testified that he quit FORKOT in March 2000, and that the last threat he received was in the early part of 2000. Riyana expressed fear that upon returning to Indonesia, the people who threatened him would still recognize him as an activist and want to harm him. However, Riyana did not know if ex-activists were being persecuted in Indonesia. Additionally, the only proof that Riyana offered of his membership in FORKOT was his student identification card.

At the conclusion of the hearing, the IJ rendered an oral decision denying the applications for relief and granting voluntary departure. According to the IJ, Riyana entered the United States in October 2001, and was placed in removal proceedings in October 2003. The IJ stated that Riyana did not apply for asylum until after he was put into removal proceedings, that he was clearly barred by the one-year statute of limitations, and that there was no evidence of changed circumstances to excuse his failure to meet the one-year deadline. Additionally, the IJ stated that the fact that Riyana did not know about asylum did not amount to an extraordinary circumstance under 8 C.F.R. § 1208.4(a)(5). The IJ concluded that Riyana's claim was barred for failing to meet the one-year filing deadline.

The IJ also dismissed Riyana's application for withholding of removal. The IJ noted that Riyana offered some vague testimony about threats from unknown people telling him to quit his activities with FORKOT, that there was no evidence that anyone attempted to carry out the alleged threats of kidnaping, and that Riyana's activities did not

change as a result of these threats, which allegedly continued for more than one year. The IJ then concluded that the conduct Riyana experienced simply did not rise to the level of past persecution. The IJ also found that Riyana had failed to meet his burden of proof that it is more likely than not that he would be persecuted in the future if returned to Indonesia. In making this finding, the IJ noted that Riyana provided absolutely no corroboration of his involvement in FORKOT, and failed to establish that former members of this organization were being persecuted in Indonesia. Moreover, the IJ noted that there had been recent democratic elections in Indonesia. Finally, the IJ denied Riyana's claims under CAT, noting that there was absolutely no evidence that Riyana would be tortured by anyone in Indonesia. The IJ, however, did grant Riyana's application for voluntary departure.

Riyana filed an appeal of the IJ's decision, arguing that the IJ erred in determining that Riyana did not suffer past persecution and that there was no clear probability he would suffer future persecution if returned to Indonesia due to his activities as an activist.

On March 22, 2007, the BIA dismissed Riyana's appeal and affirmed the IJ's decision. The BIA stated that Riyana arrived in the United States in October 2001, and did not file his asylum application until December 2004. The BIA also stated that Riyana offered no evidence of any changed circumstances, and that his reason for the late filing did not constitute an extraordinary circumstance. Accordingly, the BIA concluded that the evidence supported the IJ's determination that Riyana was statutorily ineligible for

asylum due to his failure to meet the one-year deadline.

The BIA also agreed with the IJ's conclusion that Riyana did not face a clear probability of persecution if returned to Indonesia, and thus did not merit withholding of removal. The BIA noted that Riyana claimed he was a member of FORKOT beginning in 1999, and that he received threatening phone calls from 1998 to 2000, in which an unknown person or persons stated that they were going to capture and kidnap him. The BIA observed that the threats began even before Riyana joined FORKOT. More importantly, the BIA noted that the alleged threats never materialized and that there appears not to have been any attempted kidnaping of Riyana while he was in Indonesia. Thus, the BIA agreed with the IJ that the evidence was insufficient to show that the threats to Riyana rose to the level of past persecution.

Finally, the BIA agreed with the IJ that Riyana had not established that it is more likely than not that he would be tortured by, or at the acquiescence of, the Indonesian government if removed to that country.

**II.**

We have jurisdiction to review a final order of removal by the BIA pursuant to 8 U.S.C. § 1252(a). However, we do not have jurisdiction to review a decision regarding whether an asylum application is untimely or whether an alien has established changed or extraordinary circumstances that would excuse an untimely asylum application. 8 U.S.C. § 1158(a)(3); see also Sukwanputra v. Gonzales, 434 F.3d 627, 635 (3d Cir. 2006).

Insofar as the BIA adopted the findings of the IJ, we must review the decision of the IJ, as well as the decision of the BIA. Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001) ("When the BIA defers to an IJ, a reviewing court must, as a matter of logic, review the IJ's decision to assess whether the BIA's decision to defer was appropriate."). However, as to matters on which the BIA issues its own opinions and does not summarily adopt the findings of the IJ, we review only the decision of the BIA. Li v. Att'y Gen. of the United States, 400 F.3d 157, 162 (3d Cir. 2005).

Our review is extremely narrow in scope. Abdulrahman v. Ashcroft, 330 F.3d 587, 591 (3d. Cir. 2003). "The standard of review is the familiar 'substantial evidence' standard," under which the "'administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Zheng v. Gonzales, 417 F.3d 379, 381 (3d Cir. 2005) (quoting 8 U.S.C. § 1252(b)(4)(B)). Our review of the application of legal principles to undisputed facts is de novo. Chen v. Att'y Gen. of the United States, 491 F.3d 100, 109-10 (3d Cir. 2007).

### III.

On appeal to this Court, Riyana asserts that the IJ made an erroneous credibility determination when he found Riyana did not have a credible claim that he was involved with FORKOT. Riyana also argues that the IJ and the BIA erred in not granting Riyana asylum and withholding of removal based on their conclusions that the evidence was insufficient to show that the threats to Riyana rose to the level of past persecution.

Riyana maintains that he is entitled to relief under the INA because not only has he suffered past persecution for his anti-government activities, but he also has a well-founded fear of persecution should he be returned to Indonesia.

Riyana claims errors by both the IJ and the BIA. However, because the BIA did not summarily affirm or adopt the decision of the IJ, we limit our review to the decision of the BIA. Li, 400 F.3d at 162. Therefore, Riyana's argument that the IJ made an erroneous credibility determination is unavailing as this concerns an issue outside the scope of our review.

With respect to Riyana's application for asylum, the BIA dismissed his application as untimely and not excused by any changed or extraordinary circumstances. Riyana does not challenge this timeliness determination, and, even if he did, we would not be able to review it because the statute specifically precludes us from exercising jurisdiction over this issue. See 8 U.S.C. § 1158(a)(3). Consequently, we have no jurisdiction to consider an appeal by Riyana of the BIA's decision regarding his asylum application.

We next turn to Riyana's application for withholding of removal. To be eligible for such relief, Riyana was required to establish a "clear probability," i.e., that "it is more likely than not," that his life or freedom would be threatened if returned to Indonesia due to his race, religion, nationality, membership in a particular social group, or political opinion. Zubeda v. Ashcroft, 333 F.3d 463, 469 (3d Cir. 2003) (citations and internal quotations omitted). Riyana could meet this standard by proving past persecution, which

creates a rebuttable presumption of future persecution. 8 C.F.R. § 1208.16(b)(1). Persecution is extreme conduct such as "'threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom.'" Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005) (quoting Fatin v. INS, 12 F.3d 1233, 1240 (3d Cir. 1993)). "It is established, however, that threats standing alone . . . constitute persecution in only a small category of cases, and only when the threats are so menacing as to cause significant actual 'suffering or harm.'" Li, 400 F.3d at 164 (internal citations and quotations omitted). Unfulfilled threats must be of a highly imminent and menacing nature in order to constitute persecution. Id.

In its decision, the BIA concluded that Riyana does not face a clear probability of persecution if returned to Indonesia. Because the BIA made no findings on the issue of Riyana's credibility, we proceed as if his testimony was credible and determine whether the BIA's decision is supported by substantial evidence in the face of the assumed credibility. See Li, 400 F. 3d at 163 (citing Kayembe v. Ashcroft, 334 F.3d 231, 235 (3d Cir. 2003)). In particular, the BIA found that the evidence offered by Riyana was insufficient to show that the threats he received rose to the level of past persecution. The BIA reached this conclusion after considering that Riyana was a member of FORKOT; that he received threatening phone calls from 1998 through 2000, in which unidentified individuals threatened to capture and kidnap him; that there were no other incidents in Indonesia; that the threats never materialized; and that there did not appear to have been

any attempted kidnaping of Riyana while he was in Indonesia.

We agree with the BIA that the threats Riyana received were not sufficiently imminent or concrete for them to be considered past persecution. Additionally, there is substantial support in the record for the BIA's conclusion that Riyana does not face a clear probability of persecution if returned to Indonesia. There is no evidence that former members of FORKOT are being persecuted, the Country Report does not mention persecution of former activists, and there have been democratic elections in Indonesia.

## IV. Conclusion

For the foregoing reasons, we will deny Riyana's petition for review.