NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2091
_____

MEHMOOD UL-HASSAN SYED,

Petitioner

v.

ATTORNEY GENERAL
OF THE UNITED STATES OF AMERICA
_____

On a Petition For Review of an Order
of the Board of Immigration Appeals
(Agency No. A094-879-775)
Immigration Judge: Miriam K. Mills
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 3, 2014

Before:    AMBRO, SHWARTZ and SLOVITER, Circuit Judges

(Opinion filed: September 3, 2014)
_____

OPINION
_____

PER CURIAM

Mehmood Ul-Hassan Syed ("Syed") petitions for review of the Board of

Immigration Appeals' final order of removal.  For the reasons that follow, we will deny

the petition for review.

Syed, a native and citizen of Pakistan, entered the United States in 1998 without

inspection by an immigration officer.  In January, 2006, a religious worker visa petition

that was filed on his behalf was denied. In November of that same year, removal proceedings were initiated against him pursuant to Immigration & Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i) (alien present in the United States without being admitted or paroled). It is undisputed that Syed is removable as charged.[1] Syed sought statutory withholding of removal and protection under the Convention Against Torture, and, on October 5, 2011, he appeared before the Immigration Judge to testify in support of his claim of political and religious persecution.

Syed testified that he joined the Pakistan People's Party ("PPP") in the 1980's. He raised funds for them for about three years, and he worked on a PPP candidate's election campaign in 1983. At that time, Pakistan was under martial law, as ordered by then Prime Minister Zia-ul-Haq, and PPP meetings were held in secret. On September 28, 1983, political opponents threw rocks at Syed and fellow PPP party members; one rock struck Syed's head and injured him. He went to a clinic where his head was bandaged, and he stayed home for a few days to recuperate. When asked if any other incidents had occurred on account of his political activities, Syed responded that, one day, he and others were standing in the road holding a pro-Bhutto sign when a military officer waved at them. Shortly thereafter, the police arrived and took everyone to the police station. Syed was detained for a few minutes, and warned never to repeat this activity. Syed further testified that, because of his support for the PPP, he received death threats from persons supporting or working for the government. During a local election in 1987, which a PPP candidate won, he received anonymous telephone threats. Syed testified that things have not improved in Pakistan since the 1980's; that he comes from the

---

[1] An additional charge was added at a later date but ultimately not sustained.

Punjab province, which is controlled by the rival Pakistan Muslim League ("PML"); and that the PML knows him and "nobody forgets" anything in Sohawa, the village where he lived. Syed also testified that he is a Shi'a Muslim and that his entire family is Shi'a, and that the Shi'a are a persecuted religious minority in Pakistan. In support of his application, Syed submitted affidavits from his father, wife,[2] and other persons; and he also submitted documentary evidence of conditions in Pakistan, including the State Department 2010 Human Rights Report, which showed continuing violence and discrimination against religious minorities in Pakistan.

At the conclusion of the hearing, the IJ issued an oral decision denying relief. The IJ found that Syed was not credible. Alternatively, the IJ considered the past harm that Syed claimed he suffered on account of his political opinion, and found that the incidents alleged did not rise to the level of persecution. In addition, the country conditions evidence revealed that the Pakistan People's Party has been in power since 2008 and that the party controls key sectors of the national government. Syed offered no country conditions evidence to support his claim that the Pakistan Muslim League, and not the PPP, actually controls matters in Punjab. Regarding the issue of corroboration, the IJ found that Syed failed to explain why his lawful permanent resident sister, who lives in New York, did not appear on his behalf, given that she arrived from Pakistan five to six months previously and had knowledge of the threats he claimed to continue to receive. The IJ also found that Syed had not established that he is a Shi'a Muslim. On his initial application, he indicated that his wife and children's ethnicity or tribal group was "Sunny" (which the IJ assumed meant "Sunni"). He was questioned about this on cross-

---

[2] Syed's wife and two children are living in Pakistan.

examination and his explanation was that it must have been a typographical error that he overlooked when he was signing the application. Additionally, although Syed asserted that his wife and father did not attend mosque because of the violence against Shi'a Muslims in Pakistan, neither of their affidavits mentioned their religion or harm that they are facing because of their religion. Last, the IJ found no evidence to support Syed's torture claim because it would be his own party, the PPP, that would be required to acquiesce to such torture.

Syed appealed to the Board of Immigration Appeals. On April 3, 2014, the Board dismissed Syed's appeal. The Board declined to address the adverse credibility determination, given that the IJ determined in the alternative that Syed had not suffered harm rising to the level of persecution, and had not established that he would more likely than not be persecuted or tortured in Pakistan. The Board then agreed with the IJ's determination that Syed had not met his burden of proof. Specifically, the Board noted that the minor injury resulting from the 1983 rock-throwing incident, the brief detention, and the threats, did not cumulatively amount to past persecution. The Board further agreed with the IJ that Syed had not shown a likelihood of future persecution or torture. The Board reiterated the IJ's findings that the PPP has been in power in Pakistan since 2008, and that Syed offered no support for his claim that the PML, and not the PPP, actually controls his hometown in Punjab. The Board further noted Syed's evidence from family members in Pakistan that supported his claim that he receives threats, but then also noted that the evidence did not persuasively establish an entitlement to relief because it did not show that he received any threats *after* 2007. The Board found the time period after 2007 to be particularly relevant because the PPP, Syed's own party,

4

gained power in 2008. In addition, the Board upheld the IJ's determination that Syed did not suffer past persecution on account of his Shi'a Muslim religion because he did not establish that he is, in fact, Shi'a. Specifically, the Board noted that Syed's first application indicated that his family members are "Sunny." Even though his second application indicated that he and his entire family are Shi'a, the Board disagreed with Syed's argument that there was no reason to doubt his religious affiliation, for the reasons set forth by the IJ, including that while Syed submitted letters from his father and his wife, the letters did not indicate that they are Shi'a, or that they have faced harm because of their religion.

Syed has timely petitioned for review. We have jurisdiction under 8 U.S.C. § 1252(a)(1), (b)(1). Administrative findings of fact are reviewed for substantial evidence. See Shardar v. Ashcroft, 382 F.3d 318, 323 (3d Cir. 2004). We treat the agency's findings of fact as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 n.1 (1992). To establish entitlement to withholding of removal under section 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), the applicant must demonstrate a "clear probability" of persecution through the presentation of evidence that it is more likely than not that he would be subject to persecution if deported. See Mulanga v. Ashcroft, 349 F.3d 123, 132 (3d Cir. 2003). This is a more stringent standard than the asylum standard. See Mudric v. Att'y Gen. of

U.S., 469 F.3d 94, 102 n.8 (3d Cir. 2006) (citing Janusiak v. Immigration & Naturalization Serv., 947 F.2d 46, 47 (3d Cir. 1991)).[3]

We will deny the petition for review. Substantial evidence supports the agency's determination that Syed failed to establish eligibility for statutory withholding of removal on the basis of his political and religious persecution claims. The agency determined that what happened to Syed in the 1980's did not rise to the level of persecution, and the record does not compel a contrary conclusion. See Kibinda v. Att'y Gen. of U.S., 477 F.3d 113, 119-20 (3d Cir. 2007) (five-day detention resulting in minor injury did not amount to persecution); Voci v. Gonzales, 409 F.3d 607, 615 (3d Cir. 2005) (single beating that does not result in serious physical injury does not compel reversal of the Board's decision that alien did not suffer past persecution); Li v. Att'y Gen. of U.S., 400 F.3d 157, 164 (3d Cir. 2005) (unfulfilled threats must be highly imminent and menacing in nature to constitute persecution). Persecution is defined as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." Kibinda, 477 F.3d at 119 (quoting Fatin v. Immigration & Naturalization Serv., 12 F.3d 1233, 1240 (3d Cir. 1993)). It refers only to "severe" conduct and "does not encompass all treatment our society regards as unfair, unjust or even unlawful or unconstitutional." Id. What allegedly happened to Syed in the 1980's was not severe, and, accordingly, the Board's determination that Syed did not prove past persecution is supported by substantial evidence.

Because Syed did not show that he suffered persecution in the past, there is no presumption that his life or freedom would be threatened in the future. 8 C.F.R. §

---

[3] Because the Board did not reach the issue of Syed's credibility in dismissing his appeal, Syed's credibility is not now in dispute.

1208.16(b)(1)(i). In claiming a well-founded fear of persecution where the presumption is not in play, Syed must show that he would be individually singled out for persecution or demonstrate that there is a pattern or practice of persecution of persons similarly situated to him in Pakistan. See Lie v. Ashcroft, 396 F.3d 530, 536 (3d Cir. 2005). As with any claim of persecution, the acts constituting persecution must be committed by the government or forces the government is either unable or unwilling to control. See Garcia v. Att'y Gen. of U.S., 665 F.3d 496, 505 (3d Cir. 2013). Substantial evidence supports the agency's determination that Syed failed to prove that there is a future threat to his life or freedom. We reject as unpersuasive his argument that the IJ did not consider his evidence and did not give his affidavits the proper weight. As a general matter, the IJ is permitted to accord less weight to the affidavits of interested witnesses. See Matter of H-L-H- & Z-Y-Z-, 25 I. & N. Dec. 209, 215 (BIA 2010). In any event, the record shows that the agency fully considered Syed's affidavits and news articles. The fact remains that the PPP, Syed's own party, has been in power in Pakistan since 2008, and Syed failed to offer any persuasive evidence to show that the PML, and not the PPP, actually controls Punjab. Furthermore, his evidence does not show that he received any threats after 2007. As to the IJ's finding fault with the fact that Syed's sister, who lives in New York, did not appear on his behalf, we note that corroboration may be required when it is reasonable, as it was here, to expect the applicant to provide it. See Zheng v. Gonzales, 417 F.3d 379, 382 (3d Cir. 2005). In sum, the agency reasonably determined that Syed's testimony and documentary evidence does not establish that he will, more likely than not, be persecuted in Pakistan.

7

The agency's conclusion that Syed's claim of religious persecution failed because he did not establish that he is a Shi'a Muslim is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); Elias-Zacarias, 502 U.S. at 481 n.1. We are not compelled to reach a different result, because Syed's first application for relief indicates that his family members are "Sunny" and section 13 of the application, where Syed would have provided his ethnicity or tribal group, was left blank. His second application indicates that he and his family are "Shi'a," but the inconsistency between the two applications goes to the very heart of Syed's claim. Cf. 8 U.S.C. § 1158(b)(1)(B)(iii) (under the REAL ID Act, "a trier of fact may base a credibility determination . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim"). Syed testified that there is no reason to doubt that he is affiliated with the Shi'a sect because "Syed" is a Shi'a name, but he admitted when testifying that, although most are, not everyone whose name is "Syed" is a Shi'a. A.R. 298. In addition, the letter from his wife does not indicate that the family is Shi'a or that Syed or the family are facing harm on account of the family's religion. Her affidavit addresses only the issue of political persecution. Ultimately, it is the applicant's obligation to prove his claim. 8 C.F.R. § 208.16(b); Mulanga, 349 F.3d at 133 n.6. Syed sufficiently established his membership in the PPP, but he failed to prove his religious affiliation.

Last, to obtain protection under the CAT, the applicant must show that it is "more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. §§ 1208.16(c)(1) and (2). The alleged torture must be "intentionally inflicted . . . by or at the instigation of or with the consent or acquiescence of a public

8

official or other person acting in an official capacity." Id. at § 1208.18(a)(1). Although there is violence and torture in Punjab according to Syed's country conditions evidence, "reports of generalized brutality within a country do not necessarily allow an alien to sustain his/her burden under the Convention Against Torture." Zubeda v. Ashcroft, 333 F.3d 463, 478 (3d Cir. 2003). The 2010 Department of State Human Rights Report on Pakistan makes no connection between the reports of torture and the activities of PPP members. Therefore, substantial evidence supports the agency's determination that Syed did not establish that it is more likely than not that he would be tortured by or with the acquiescence of the Pakistan government.

For the foregoing reasons, we will deny the petition for review.