**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4254
_____

LIZETH ROMERO ZAMBRANO; D.A.E.R.,
                                        Petitioners

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                        Respondent

_____

On Petition for Review of an Order
of the Board of Immigration Appeals
(Agency Nos. A208-551-639; A208-551-640)
Immigration Judge: Roxanne C. Hladylowycz
_____

Submitted under Third Circuit L.A.R. 34.1(a)
July 12, 2017

Before: MCKEE, AMBRO and RESTREPO, *Circuit Judges*.

(Filed: August 22, 2017)

_____

OPINION[*]
_____

_____

  [*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Lizeth Romero Zambrano and her four-year-old son D.A.E.R (collectively, "Petitioners") petition for review of the decision of the Board of Immigration Appeals ("BIA") dated November 16, 2016, which affirmed the Immigration Judge's ("IJ") decision to deny their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the reasons that follow, we will deny the petition in part and grant it in part.

## I

Zambrano and D.A.E.R. are natives and citizens of Colombia. On September 21, 2015, they presented themselves at the United States border seeking protection from persecution by the Fuerzas Armadas Revolucionarias de Colombia ("FARC"), a guerilla revolutionary group in Colombia.

At her asylum hearing before the IJ, Zambrano testified that, prior to coming to the United States, she had owned an apparel store in Cali, Colombia. On August 1, 2014, members of the FARC began to visit her store. On these visits, the FARC demanded money and merchandise, and informed Zambrano that there would be consequences if she did not comply with their demands. The FARC's visits continued for four weeks, at which point Zambrano decided to relocate to Jamundi, Colombia and reopen the store, which she did in October 2014.

Shortly thereafter, members of the FARC discovered Zambrano's store in Jamundi and renewed their efforts to extort her. Jamundi locals informed Zambrano that she and her family could be kidnapped or killed if she were to tell anyone about the FARC's

visits.  In January 2015, Petitioners again relocated to evade the FARC, this time to Jumbo, Colombia.  In March 2015, Zambrano learned that the FARC were searching for her in Jumbo.

In September 2015, Zambrano went to the Colombia Attorney General's Office for advice.  It recommended to Zambrano that she go to the police and consider moving abroad to avoid the FARC.  Zambrano did not contact the police, but decided to leave Colombia with D.A.E.R. and fly to the United States, where they were apprehended at the border.

In November 2015, Zambrano applied for asylum, withholding of removal, and protection under CAT.  Zambrano indicated on her application that D.A.E.R. was to be included as part of her application.  On January 4, 2016, prior to the hearing on Zambrano's November 2015 application, a separate application for asylum, withholding of removal, and protection under CAT was submitted on D.A.E.R.'s behalf.

Petitioners presented the IJ with a variety of evidence in support of their applications, including Zambrano's oral testimony and sworn statements and reports describing the conditions in Colombia as they pertained to the FARC ("country conditions report").  Petitioners also provided a letter from Zambrano's brother and a copy of the complaint Zambrano submitted to the Colombia Attorney General.

On January 20, 2016, the IJ denied Petitioners' claims after finding that Zambrano was not credible.  The IJ identified several inconsistencies between Zambrano's various sworn statements.  The IJ also found that Zambrano lied about her mother's whereabouts to the IJ at her hearing, as well as to her asylum officer upon entry to the United States.

3

Petitioners appealed the IJ's decision to the BIA. The BIA dismissed the appeal, finding that the IJ's adverse credibility determination was not clearly erroneous. The BIA's opinion included a footnote stating that D.A.E.R.'s claims for relief were dependent on, or "riding on," Zambrano's application.

On December 5, 2016, Petitioners submitted to this Court their petition for review of the BIA's decision denying their applications. They argue that: (a) the IJ's adverse credibility finding was not supported by substantial evidence; (b) the BIA and IJ failed to consider independent evidence supporting the CAT claim; and (c) the BIA and IJ failed to consider D.A.E.R.'s separate application for relief.

## II[1]

### A.  *Asylum and Withholding of Removal*

The BIA upheld the IJ's decision to deny Zambrano's claims for asylum and withholding of removal solely because of the IJ's adverse credibility determination. We review an adverse credibility determination, like other administrative findings of fact, under the substantial evidence standard. *Balasubramanrim v. I.N.S.*, 143 F.3d 157, 161 (3d Cir. 1998). Under this standard, an agency's adverse credibility determination "[is] conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). An adverse credibility determination can be based on inconsistency between a petitioner's statements in the record and "any inaccuracies or

---

[1] This Court has jurisdiction to review final orders of the BIA pursuant to 8 U.S.C. § 1252. Where, as here, the "BIA has affirmed the IJ's decision, and adopted the analysis as its own, we will review both decisions." *Dong v. Att'y Gen.*, 638 F.3d 223, 227 (3d Cir. 2011).

4

falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii).

Here, the IJ's adverse credibility determination is supported by substantial evidence. The IJ noted numerous falsehoods and inconsistencies between Zambrano's testimony and the sworn statements in her original application, which were reiterated by the BIA. First, the IJ noted that Zambrano stated in her application, through her attorney, that "local criminals" had initially attempted to extort them in Jamundi. However, in her hearing testimony Zambrano stated that they were members of the FARC. Second, the IJ found inconsistencies in Zambrano's answers regarding her visa applications to the United States. Finally, the IJ found that Zambrano admitted to lying, both to the asylum officer upon her entry to the United States and to the IJ at her asylum hearing, about her mother's whereabouts. Zambrano initially stated to the IJ and her asylum officer that her mother was residing in Colombia, but later admitted that her mother was living with family in Atlanta, Georgia. These inconsistencies and falsehoods, particularly Zambrano's admission that she had lied to the asylum officer and the IJ, amount to substantial evidence in support of the IJ's adverse credibility determination.

The IJ's adverse credibility determination, supported by substantial evidence, provides sufficient basis to deny Zambrano's asylum claim. *See Dia v. Ashcroft*, 353 F.3d 228, 247 (3d Cir. 2003) (stating "[a]n alien's credibility, by itself, may satisfy his burden, or doom his [asylum] claim"); *Zheng v. Att'y Gen.*, 549 F.3d 260, 266 (3d Cir. 2008) ("An applicant bears the burden of proving eligibility for asylum based on specific facts and *credible testimony*." (emphasis added)). The IJ's adverse credibility

5

determination also disposes of Zambrano's withholding-of-removal claim. *Lukwago v. Ashcroft*, 329 F.3d 157, 182 (3d Cir. 2003) ("The standard for withholding of removal is higher than, albeit similar to, the standard for asylum. . . . If [a petitioner] is unable to satisfy the standard for asylum, he necessarily fails to meet the standard for withholding of removal . . . ."). Accordingly, we will deny the petition for review as to Zambrano's claims for asylum and withholding of removal.

### B. *Protection Under CAT*[2]

The IJ's and the BIA's decision to reject Zambrano's CAT claim relied solely on the IJ's adverse credibility determination. In her decision, the IJ stated that "[Zambrano] has set forth absolutely no credible claim that it is more likely than not that she would be tortured if forced to return to Colombia, and therefore her application for withholding of removal under the [CAT] must . . . be denied." App. 30. Similarly, the BIA stated that "[t]o the extent that [Zambrano's] claim for CAT relief relies on her testimony, the Immigration Judge's adverse credibility finding necessarily precludes [her] from establishing eligibility for protection under the CAT through credible testimony." App. 12.

When a petitioner's CAT claim relies solely on his or her credibility, an adverse credibility determination will preclude relief. *See Zheng v. Gonzales*, 417 F.3d 379, 383

---

[2]A CAT claim requires a petitioner to show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Torture must be inflicted "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

6

(3d Cir. 2005). However, when a petitioner provides evidence independent of his or her credibility to corroborate that claim, an adverse credibility determination alone is insufficient to defeat a CAT claim. *Tarrawally v. Ashcroft*, 338 F.3d 180, 188 (3d Cir. 2003). Here, Zambrano presented independent evidence to support her CAT claim. She presented the IJ with a letter from her brother, which detailed the harm that Petitioners faced from the FARC and their reasons for fleeing Colombia. She also presented the IJ with a country conditions report, which indicated the risk to civilian lives posed by both the FARC and the Colombian military resulting from fighting between the two groups. This evidence supports her CAT claim, but was not addressed by the IJ and the BIA in their decisions denying the claim. We therefore will grant the petition for review with respect to Zambrano's CAT claim and remand to the BIA with instructions to consider the independent evidence of record.

## C.    *D.A.E.R.'s Claims to Relief*

Petitioners also argue to this Court that the BIA failed to consider D.A.E.R.'s separate application for relief. The BIA's opinion stated in a footnote that D.A.E.R. was "riding on" Zambrano's application. But the record is unclear on this issue.

Zambrano's initial application noted that D.A.E.R. was to be included in her application. On January 4, 2016, D.A.E.R. submitted a separate application for relief. On January 20, 2016, at the hearing before the IJ, Petitioners' counsel seemed to indicate that D.A.E.R. was "riding on" Zambrano's application. However, neither the IJ nor Petitioners' counsel addressed the status of D.A.E.R.'s separate application during the hearing. Further, the IJ's opinion does not acknowledge the separate application.

7

Petitioners argued to the BIA that the IJ erred by failing to consider D.A.E.R.'s separate application. They asserted that D.A.E.R. received specific threats of death and that he "feared persecution on account of a different protected ground than his mother's."[3] A.R. 14. The BIA never addressed this argument or D.A.E.R.'s separate application. So we will remand D.A.E.R.'s claims to the BIA for consideration in light of this record. *See I.N.S. v. Ventura*, 537 U.S. 12, 17 (2002).

### III

For the foregoing reasons, we will deny the petition for review as to Zambrano's claims for asylum and withholding of removal. We will grant the petition as to Zambrano's CAT claim and as to D.A.E.R.'s claims for relief, and we will remand to the BIA for further proceedings consistent with this opinion.

---

[3] Further, the country conditions reports submitted by Petitioners indicate that the FARC may pose a particular threat to children, as they recruit and kidnap children to join their forces.