**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2664
_____

OLUWATOMIWA BABATUNDE ADEJIMI,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
Respondent
_____

On Petition for Review of a Decision of the
United States Department of Justice
Board of Immigration Appeals
(A212-974-627)
Immigration Judge: Daniel A. Morris
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on March 21, 2019

Before: SHWARTZ, KRAUSE, and BIBAS, *Circuit Judges*

(Filed: July 24, 2019)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

BIBAS, *Circuit Judge*.

Aliens often testify at their own removal proceedings. But immigration judges can ask aliens to corroborate their testimony. If an alien fails to do so and does not explain that failure, the judge can deny his claim to asylum.

That is what happened here. An immigration judge found that Oluwatomiwa Adejimi's corroborating documents were forged, and his testimony had no other support. So the judge denied his application for asylum. Because this holding rested on substantial evidence, we will deny Adejimi's petition for review.

## I. BACKGROUND

Adejimi, a Nigerian citizen, came to the United States in June 2017. Border Patrol agents interviewed him at the airport. He first told the agents that he had come to the United States for a training program at American University. He showed an invitation from the university and a student ID card from a school in Nigeria. But the university had not offered this training program for at least two years. After the agents discovered his lie, Adejimi admitted that he had paid hundreds of dollars for the fake invitation and ID card. He then told the agents that he feared going back to Nigeria because "people in Nigeria were ritualistic." AR 222.

A few months later, Adejimi applied for asylum. To support his claim, he submitted six letters: one from his high school dated 2004, one from a hospital dated 2017, and four from different witnesses dated 2017. He gave the government original copies of these

2

documents. The Department of Homeland Security then sent them to a lab for analysis to determine their authenticity.

The lab report highlighted the letters' suspicious irregularities: Even though the letters from the school and the hospital were supposedly written by two different people thirteen years apart, the lab found that they were printed on the same printer. The letters from four different witnesses were likewise printed on the same printer as one another. The signature on the hospital letter "contain[ed] characteristics consistent with unnatural writing." AR 264. And the numbers written at the bottom of two of the witness letters shared similar handwriting, "indicating that they were probably written by the same individual." *Id.*

In December 2017, Adejimi had an asylum hearing. At the hearing, Adejimi admitted that he had "lie[d]" when he told Border Patrol Agents that he feared returning to Nigeria because "people in Nigeria were ritualistic." AR 224. Instead, he said that he had been persecuted in Nigeria for being gay. And despite having several weeks' notice about the lab's findings, he did not challenge or explain them at the hearing. He could not explain where the letters came from or how they were collected. He testified that his cousin had gathered the letters, but he knew nothing more. He also could not explain why the letters had been printed on the same printer. And after conferring with his lawyer, he decided not to question the report's author as a witness, expressly "waiv[ing] [his] objection to the admission of this report into evidence." AR 182-83.

After the hearing, the immigration judge denied Adejimi's asylum application. While the judge found his testimony credible, he noted "several inconsistencies between his in-Court testimony, airport interview, and other evidence in the record." AR 59. So the judge

was "not persuaded by [Adejimi's] testimony and affidavit alone." *Id.* The judge sought corroboration that Adejimi is gay and that he was persecuted, but the only corroborating evidence was the letters. Because of the lab's findings, the judge gave the letters little or no weight. So the judge found that Adejimi had failed to meet his burden of proof and denied his asylum claim. The Board of Immigration Appeals affirmed. Adejimi now petitions for review.

Normally, we limit our review to the Board's decision. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001). Not here. Because the Board relied on the immigration judge's reasoning, we may look to the judge's opinion too. *Sandie v. Att'y Gen.*, 562 F.3d 246, 250 (3d Cir. 2009).

We review questions of law de novo. *Id.* at 251. Our review of factual findings, however, is "extraordinarily deferential." *Id.* (internal quotation marks omitted). We review them only for substantial evidence and so "must uphold findings of fact unless the record evidence compels a contrary finding." *Yuan v. Att'y Gen.*, 642 F.3d 420, 425 (3d Cir. 2011); *accord* 8 U.S.C. § 1252(b)(4)(B). We apply that same deference to a judge's finding that corroborating evidence is available. 8 U.S.C. § 1252(b)(4) (hanging paragraph).

## II. THE IMMIGRATION JUDGE AND THE BOARD RELIED ON SUBSTANTIAL EVIDENCE IN FINDING ADEJIMI'S TESTIMONY UNCORROBORATED

Adejimi argues that the immigration judge and the Board erred in finding that he had not corroborated his testimony. But the record supports their findings.

4

An alien bears the burden of proving facts to support his asylum claim. 8 U.S.C. § 1158(b)(1)(B). An immigration judge can require the alien to submit corroborating evidence to meet that burden. *Id.* Before denying an alien's claim for lack of corroboration, the judge must apply the three-pronged *Abdulai* test. First, he must identify facts that the alien could reasonably corroborate. Second, he must decide whether the alien's evidence corroborates those facts. And third, he must find whether the alien has adequately explained any lack of corroboration. *Sandie*, 562 F.3d at 253 (relying on *Abdulai*, 239 F.3d at 554).

The agency found against Adejimi on each prong of the *Abdulai* test. Because substantial evidence supports those findings, Adejimi's claim fails.

## A. The immigration judge identified facts that Adejimi could reasonably corroborate

Adejimi argues that the judge misapplied *Abdulai*'s first prong. At this prong, the judge must identify which particular facts the alien has to corroborate. The judge must also find that expecting the alien to corroborate those facts is reasonable. *Abdulai*, 239 F.3d at 554.

Here, the judge identified two facts that required corroboration. The judge asked Adejimi to corroborate that he is gay and that he was persecuted for that reason. These facts were "critical aspects of his claim." AR 83.

According to Adejimi, the judge was unreasonable in expecting corroboration. Adejimi says that his credible testimony should have sufficed. But a judge may require corroboration even if testimony is otherwise credible. 8 U.S.C. § 1158(b)(1)(B)(ii); *Abdulai*, 239 F.3d at 554. Nor was it unreasonable to expect Adejimi to get documents from Nigeria while he was detained. Indeed, he voluntarily produced the very type of

5

documents that would have corroborated his application: letters from witnesses and others supporting his testimony. And he was in touch with his cousin in Nigeria, who had access to these documents. So the judge relied on substantial evidence in identifying facts that Adejimi could reasonably corroborate.

**B. The immigration judge found that Adejimi's evidence did not corroborate the key facts**

Adejimi also challenges the judge's finding at *Abdulai*'s second prong. The judge found that Adejimi had not corroborated his testimony because the unchallenged lab report suggested that his letters were forged. He raises four challenges to this finding. But all four fail, because substantial evidence supports the judge's refusal to credit the letters.

First, Adejimi argues that the judge should have considered the contents of the letters as proof that they were authentic. But if they were forged, as the judge suspected, then the contents themselves were suspect. No matter how compelling its content, a forgery cannot authenticate itself.

Second, he argues that the judge erroneously expected the letters to meet the same authenticity standards as documents made in the United States. The judge, however, did not demand technologically advanced signs of authenticity. Instead, the judge reasonably found that letters printed at different times and places would likely have come from different printers. And he reasonably found that letters signed by different people would be unlikely to have similar handwriting near the signatures.

Third, Adejimi says the judge misread the lab report when he said that "some of the letters that are listed from different individuals may have been signed by the same

individual." AR 92. As Adejimi notes, the report did not decide whether the signatures were authentic. Yet it did find that the same person likely wrote the numbers below the signatures in two different letters. Based on this finding, the judge reasonably decided that different letters may have been signed by the same person.

Fourth, he says the judge erred by considering that none of the supposed authors of the letters was available to testify. But the lack of witness testimony can bear on a document's weight. *See Chen v. Gonzales*, 434 F.3d 212, 218 (3d Cir. 2005). Here, based on the lab report, the judge doubted the letters' authenticity. The authors' testimony could have allayed that doubt. So the judge reasonably considered the lack of that testimony as one factor in deciding to give the letters little or no weight.

In short, the judge relied on substantial evidence to find that Adejimi's letters did not corroborate his testimony.

**C. The judge relied on substantial evidence in finding that Adejimi had not adequately explained the lack of corroboration**

Finally, Adejimi argues that the judge erred at *Abdulai*'s third prong, but again to no avail. Adejimi's only explanation for his failure to corroborate was that his cousin had collected the letters. The judge found that this explanation was inadequate. Adejimi argues that the judge improperly considered whether his cousin had access to corroborating evidence, rather than whether he himself had access to it.

But a judge may expect an alien in custody to contact his relatives for evidence. We have noted that corroborating evidence was available when aliens had "lines of

communication" to their relatives living abroad. *Chen*, 434 F.3d at 219; *Zheng v. Gonzales*, 417 F.3d 379, 382 (3d Cir. 2005).

Here, Adejimi was in contact with his cousin. Yet he could not explain how his cousin got the letters, nor why they were printed on the same printer. Thus, the judge's rejection of Adejimi's explanation rested on substantial evidence.

\* \* \* \* \*

To corroborate his testimony, Adejimi offered suspicious letters and nothing else. And he could not explain why the judge should excuse his failure to corroborate. So the judge relied on substantial evidence in finding that Adejimi's testimony lacked corroboration, and the Board properly agreed. We will thus deny the petition.